No. 8716.

LINDSLEY v. CITY AND COUNTY OF DENVER.

1. OFFICER—*Ex Officio.* Where the statute provides that an officer shall act *ex officio* in another capacity, if the duties of each are of the same general nature, and inseparably blended in the statute creating the independent office, the incumbent holds but one office. If the duties of the two are distinct and governed by different and independent regulations, he holds two distinct and separate official positions.

On the first day of December, A. D., 1902, the City of Denver, and that part of Arapahoe included within its limits, were by constitutional amendment (art. XX) merged into the City and County of Denver. The inhabitants of the new municipality were authorized to frame a charter by which their affairs should be controlled and as a temporary measure of government it was provided that the charter and ordinances of the City of Denver should, "for the time being only, and as far as applicable", be the charter and ordinances of the City and County; that certain of the city officers' names should continue, occupying similar offices in the city and county, and that the District Attorney should be *ex officio* attorney of the city and county.

The County of Arapahoe was then a Judicial District (Laws 1891, 136), and the plaintiff was the District Attorney therefor, duly elected and qualified. The constitutional amendment provided that the new municipality should constitute a Judicial District.

Plaintiff, upon the adoption of the constitutional amendment, qualified in the office of the Attorney of the City and County of Denver, and performed the duties of that office until December, 1904.

*Held* that the office of attorney of the City and County of Denver was an office separate and distinct from that of District Attorney, and that plaintiff was entitled to the salary prescribed by the charter and ordinances of the City of Denver, in force at the date of the taking effect of the constitutional amendment.

2. CONSTITUTIONAL LAW—*Art. XX Construed.* It was contended for the defendant that the office of Attorney of City and County of Denver, *ex officio*, if separate and distinct from the office of District Attorney, was a new office, without any prescribed sal-

ary, that the provisions of the existing charter and ordinances of the City of Denver were not "applicable" to the new conditions.

But the court were of the opinion that this was mere assumption, that *prima facie* all provisions of the former charter and ordinances were applicable, and that it was without authority to declare inapplicable any of such provisions, unless the inapplicability was apparent from something in the constitutional amendment, that if the *ex officio* attorney of the city and county was not entitled to compensation for the services rendered in that capacity, he was, for the same reason, without any power or duty in that function, which was to impute to the framers of the constitutional amendment the supreme folly of creating an office without either duties or authority, and a municipal corporation without any officer authorized to represent it in the courts, and without authority to employ such officer.

The purpose of article XX, and the economies contemplated thereby considered and enlarged upon.

3. CONSTRUCTION—*Its Office and Limits.* A legislative purpose does not take effect unless expressed in written words.

From this follows the cardinal rule of construction that the intent of the legislature must be found in the words of the statute. If this be clear, and capable of but one meaning, there is neither room nor necessity for construction, and it is the duty of the courts to enforce the law as written without consideration of its policy, justice, or wisdom. When the written words may reasonably have different meanings, then, and only then, may the court consider the general purpose of the enactment, to aid in solving the ambiguity.

4. INTEREST—*Salary Public Officer.* A public *officer* whose salary is withheld from him is not entitled to interest thereon. He is not a creditor within the meaning of the statute, prescribing the rate of interest.

*Error to Denver District Court, Hon. George W. Allen, Judge.*

Mr. N. W. DIXON, Mr. CLAYTON C. DORSEY, Mr. WALTER E. SCHWED, Mr. HENRY A. LINDSLEY, *pro se,* for plaintiff in error.

Mr. JAMES A. MARSH, city attorney; Mr. THOMAS H. GIBSON and Mr. G. Q. RICHMOND, assistant city attorney, for defendant in error.

Mr. JOHN A. RUSH, *amicus curiae.*

Mr. Justice Bailey delivered the opinion of the court:

ON December 1st, 1902, Article XX, as an amendment, became a part of the State Constitution. By its provisions the city of Denver, and all included municipalities, and that part of the County of Arapahoe within the boundaries of the city, were merged into the City and County of Denver. That territory, by express provision, also became a separate judicial district.

A temporary local government, for the city and county thus formed, to exist until the people of the city should adopt a charter, was provided by section 3 of the article, in these terms:

"Sec. 3. Immediately upon the canvass of the vote showing the adoption of this amendment, it shall be the duty of the Governor of the state to issue his proclamation accordingly, and thereupon the city of Denver, and all municipal corporations and that part of the county of Arapahoe within the boundaries of said city, shall merge into the city and county of Denver, and the terms of office of all officers of the city of Denver, and of all included municipalities, and of the county of Arapahoe, shall terminate; except that the then mayor, auditor, engineer, council (which shall perform the duties of a board of county commissioners), police magistrate, chief of police and boards of the city of Denver shall become, respectively, said officers of the city and county of Denver, and said engineer shall be ex-officio surveyor, and said chief of police shall be ex-officio of the city and county of Denver; and the then clerk and ex-officio recorder, treasurer, assessor and coroner of the county of Arapahoe, and the justices of the peace and constables holding office within the city of Denver shall become, respectively, said officers of the city and county of Denver, and the District Attorney shall also be ex-officio attorney of the city and county of Denver. The foregoing officers shall hold the said offices as above specified only until their successors are duly elected and qualified, as herein provided for; except that the then district judges, county judge and

district attorney shall serve their full terms, respectively, for which elected."

The last sentence of Section 2 of the amendment is as follows:

"If any officer of said city and county shall receive any compensation whatever, he or she shall receive the same as a stated salary, the amount of which shall be fixed by the charter."

Section 4 of the article provides, *inter alia*, this:

"Sec. 4. The charter and ordinances of the city of Denver, as the same shall exist when this amendment takes effect, shall, for the time being only, and as far as applicable, be the charter and ordinances of the city and county of Denver."

When Article XX was adopted, the plaintiff was the duly elected, qualified and acting District Attorney of the County of Arapahoe, and upon its taking effect became thereunder District Attorney of the judicial district which the city and county constituted, and *ex officio* attorney of the city and county. Assuming that the provisions of the charter of the former city, relative to the office of city attorney, were applicable, he took the oath of office thereunder, as attorney for the city and county, appointed the assistants authorized by such charter, and entered upon the discharge of the duties of this office as therein defined, and continued to perform those duties until December 24th, 1904. During the years 1903 and 1904 appropriations were made for the payment of the salary provided by the old charter for the city attorney, but payment was refused by the treasurer, and this action was brought to recover such salary covering the period from December 1, 1902, to December 24, 1904.

There is no disputed fact, and the case presents only questions of law: First, did plaintiff hold two offices; second, if so, was a salary provided for the office of attorney of the city and county; and third, if yes, was plaintiff entitled to receive the salary of both offices?

Upon the first question, defendant contends that plaintiff held the office of District Attorney only, and that the purpose and effect of the provision declaring him to be ex officio attorney of the city and county was to transfer the duties of city attorney, as defined in the old charter, to the District Attorney, without compensation. No attempt, however, is made to show how any language of Article XX can have that effect.

When Article XX was framed and adopted, it was well understood that plaintiff, as District Attorney, was a state officer, whose salary was paid in part out of the treasury of the state, and in part out of the fees of the office, while, as attorney of the city and county, he was in the service of, and paid by, the local government. His powers and duties in the former capacity were defined by general law, and in the latter by local law. Moreover, it was expressly provided in Article XX that, as District Attorney, he should serve for the full term for which elected; while his term as attorney for the city and county would expire when an attorney should be selected, as provided by the charter to be adopted by the people of the city and county for that entity. *People v. Lindsley,* 37 Colo. 478. By the opinion in that case it was practically determined that plaintiff held separate and distinct offices, the tenures of which were different, terminating at different times and for different causes. The language of the provision, "and the District Attorney shall also be *ex officio* attorney of the city and county," plainly imports that plaintiff should hold two offices, to-wit, the office of District Attorney under state government, and the office of attorney of the city and county under local government. *Bonanchaud v. D'Herbert,* 21 La. Ann. 138; *People v. Edwards,* 9 Cal. 286; *Denver v. Hobart,* 10 Nev. 28; *State v. Laughton,* 19 Nev. 202, 8 Pac. 344; *Moore v. Foote,* 32 Miss. 480; *Wyoming v. Ritter,* 1 Wyo. 318.

By the law of California, when *People v. Edwards,* supra, was decided, the sheriff of each county was made ex officio tax collector. In that case Justice Fields said:

"The office of sheriff and tax collector are as distinct as though filled by different persons. The duties and obligations of the one are entirely independent of the duties and obligations of the other. The offices are not so blended that the bond executed for the faithful performance of the duties appertaining to one would embrace, in the absence of statute, the obligations belonging to the other."

In *Denver v. Hobart,* 10 Nev. 28, it appears that the law provided that the lieutenant governor should be *ex officio* warden of the state prison. Held:

"The office of lieutenant governor and warden of the state prison are as distinct as though filled by different persons. The duties and obligations of one are entirely independent of the duties and obligations of the other. * * * The act refers to and mentions the lieutenant governor only as *descriptio personae* of the *ex officio* warden."

In *State v. Laughton,* 19 Nev. 202, the act involved provided that the lieutenant governor should be *ex officio* state librarian. The court said:

"There is no vacancy in the office of lieutenant governor by, reason of respondent's failure to file a new and additional bond (as state librarian). It is claimed and conceded by both sides that the office of lieutenant governor and the office of state librarian are separate and distinct. Making a person an *ex officio* officer, by virtue of his holding another office, does not merge the two into one."

In *Moore v. Foote,* 32 Miss. 480, where a sheriff is made *ex officio* tax collector, they were held separate and distinct offices, the court saying:

"The duties and responsibilities of the individual in the different capacities in which he acts are as distinct as though each office was held by a different individual."

In *Wyoming v. Ritter,* 1 Wyo. 318, the decision was upon a statute providing that "the judge of probate shall be *ex officio* county treasurer." The court said:

"The conclusion, therefore, would seem irresistible if we look to the act alone creating the office of judge of probate, to ascertain the intent of the legislature, that it was the

intent and the legislature did create two separate and distinct offices, the duties of each to be performed by the same person. The correctness of this view as to the intent of the legislature is not lessened, but on the contrary greatly strengthened, by the fact that the duties of the office of judge of probate and that of county treasurer have no connection one with the other; each is clothed with different and distinct powers; each to perform different and distinct duties, the functions of the former being wholly judicial, the latter purely ministerial. The question, however, has been considered by one of the most respectable courts of the Union, and has, we think, ceased to be longer debatable. The Supreme Court of California has held, in numerous cases, that to make a person an *ex officio* officer by virtue of his holding another office, does not merge the two into one."

The principle underlying all the cases which determine the effect of provisions of law declaring that some officer, already chosen and acting, shall act *ex officio* in some other capacity, is this: If the duties of each capacity are of the same general nature, and inseparably blended in the law which creates and defines the undisputed office, then the officer holds but one office, but if the duties of the two capacities are separate and distinct, so that the officer while acting in the one capacity is governed by one law, and while acting in the other is governed by a different and independent law, then he holds two distinct and separate offices.

Plaintiff, as District Attorney, served under the state; as attorney of the city and county, under the city. A District Attorney, his duties and power, were defined by the state constitution and general laws; as attorney for the city and county, by the city charter and ordinances. His responsibilities and duties in the two offices were not only separate and distinct, but of an entirely different character, having no possible relation to or connection with each other. In such circumstances, under all the authorities, the words, "and the District Attorney shall also be *ex officio*

attorney of the city and county of Denver," mean that plaintiff held separate and distinct offices.

Upon the second question plaintiff contends that the office of attorney of the city and county was the office created in and by the old charter, continued under the new government, with all its incidents, except as to the term of office, because of the adoption of such charter temporarily as the charter of the new entity. Defendant contends that, if the position of attorney of the city and county was an office, it was a new one, created by Section 2 of Article XX, without compensation, as the power which created it neither provided for nor authorized compensation.

If it be assumed that the office was a new one, constitutionally created and filled, which view we think the correct one, still the conclusion that it was an office without compensation by no means results, as by such reasoning the conclusion that it was an office without powers and duties would necessarily follow. Certainly the supreme folly of creating an office without powers or duties can not be imputed to the framers of Article XX, and since they did not prescribe the powers and duties of the attorney of the city and county in the article itself, by declaring the charter of the city of Denver to be, so far as applicable, the temporary charter of the city and county, it follows that the powers and duties of the attorney of the city and county, until the adoption of the new charter, were as defined in the old one. That charter created the office of city attorney; fixed the term; prescribed his duties; authorized him to appoint two assistants and a stenographer; prescribed his salary and that of his assistants and stenographer. The phrase, "so far as applicable," as used in connection with the adoption of the temporary charter, does not place it in the power of the court to declare any provision of said charter inapplicable because of expediency, or because it does not accord with its notion of what ought to be, or with what it might think was the intention of the framers of the article. *Prima facie,* the whole charter was applicable, and to conclude that any provision

was inapplicable, it must be shown that something in the article rendered it so.

In *Hallet v. Denver*, 46 Colo. 487, 104 Pac. 1038, it was said:

" 'So far as applicable' has reference to Article XX. If there is nothing in that article which renders inapplicable the charter and ordinances of the former city, they are the charter and ordinances of the new city and county for the time being."

If any of the provisions of the temporary charter relating to the office of the city attorney were applicable to the office of attorney of the city and county, they were all applicable, unless some provision of Article XX renders certain of them inapplicable. There is nothing in Article XX which renders any of these provisions inapplicable, except the one fixing the term of office for two years, which is inconsistent with section 3, which requires the officers thereby appointed to hold until their successors are selected as provided in the charter. It can not be logically held that the provisions of the temporary charter defining the duties of the city attorney, authorizing him to appoint assistants, and fixing their salaries, were applicable, but that the provision fixing the salary of the attorney is inapplicable, for that would be purely arbitrary, and would be an exercise of a legislative and not a judicial function. Whether the office of attorney of the city and county be regarded as the office created by the old charter, as contended by plaintiff, or as a new office created by Section 3 of Artile XX, as contended by defendant, it was manifestly intended that it should be governed by the provisions of the old charter relating to the office of city attorney, which intention was given effect by the adoption of such charter as the temporary charter of the new entity. Unless this is true, the provision, "the District Attorney shall also be *ex officio* attorney of the city and county," is meaningless, and without force or effect. The salary of plaintiff as attorney of the city and county must have been fixed by the same law which prescribed his powers and duties, to-

wit, the temporary charter, because that charter can not be held to have done the one, unless it did the other, and by the same token when it did the one, it also did the other.

. There is no dispute upon the proposition that "where an officer may, and does, hold two offices, he is entitled to receive the compensation attached to each." 29 Cyc. 1424; Mechem, Public Officers, sec. 859; Throop, Public Officers, sec. 496; *United States v. Brindle,* 110 U. S. 688, 4 Sup. Ct. 180, 28 L. Ed. 286; *United States v. Saunders,* 120 U. S. 126, 7 Sup. Ct. 467, 30 L. Ed. 594; *United States v. Mc-Candless,* 147 U. S. 692, 13 Sup. Ct. 465, 37 L. Ed. 334; *Cornell v. Irvine,* 56 Neb. 657, 77 N. W. 114; *State ex rel. v. Grant,* 12 Wyo. 23, 73 Pac. 470, 2 Ann. Cas. 382; and *In re Conrad,* (C. C.) 15 Fed. 641.

In *State ex rel. v. Grant, supra,* it appears that the Secretary of State was required to act as governor upon the death of the incumbent of the latter office. Upholding his claim to the salary of both offices, the court said:

"He is required to give attention to the duties of two state offices; his responsibilities are largely increased; and every principle of justice requires that he be compensated." .

So in *In re Conrad, supra,* where a chief supervisor of elections, declared by statute to be *ex officio* United States commissioner, claimed compensation in both capacities, his claim was upheld, and the court said that where an officer is required to hold two positions, "It is consonant with the principles of justice and equity that compensation for the services should be made according to the provisions of the statute that applies to it, rather than to deny such remuneration on mere technical grounds and to require the gratuitous performance of the service by the officer." There is nothing in Article XX which either expressly or by implication takes this case out of the general rule.

*Aichele v. Denver,* 52 Colo. 183, 120 Pac. 149, is relied upon as an authority against the claim of plaintiff. That case involved an entirely different situation from the one at bar, both in fact and law. Aichele was county clerk and

*ex officio* recorder of Arapahoe County when Article XX was ·adopted. It was declared in section 3 thereof that "the then county clerk and *ex officio* recorder  *  *  * shall be said officer of the city and county of Denver." In the action which he brought, Aichele claimed that he held also the office of city clerk, and was entitled to the salary of that office as fixed by the charter. There was not the slightest basis for this claim, except as an inference sought to be drawn from the *Johnson* case, 34 Colo. 143, 86 Pac. 233, which was later overruled by the *Cassidy* case, 50 Colo. 503, 117 Pac. 357. Aichele was by the clear, explicit language of Section 3 of Article XX appointed to one office, and to one office only. Plaintiff expressly held two separate and distinct offices. Nor does the reasoning of that case, based upon the purpose of the framers of Article XX to consolidate the duties of city and county offices in the hands of one set of officials, have the slightest application to this case, for the reason that the provision under consideration was not and could not be within that purpose, since it formed no part of the general plan. It should be observed that, as to all local officers performing consolidated duties, they were limited by Article XX to one compensation. Former city officials performing consolidated duties were by the last sentence of section 2 of the article limited to the pay provided by the charter, and former county officers designated to perform consolidated duties were named for only one office and could not, therefore, have two salaries. We search Article XX in vain to find any hint of such limitation as to the pay of the District Attorney. The provision as to that office was special and temporary. He was not an official of, nor did he discharge any duties pertaining to, the city and county. The appointment of the District Attorney to the office of attorney of the city and county was as foreign to the general plan of consolidation as would have been the appointment of the attorney general of this state. If the latter had been so appointed, no one could reasonably contend that the two offices were merged.

Moreover, a consolidation of the office of District Attorney, and of attorney of the city and county, was not a change which could be perpetuated by the people of Denver in their charter as contemplated by Article XX, because by section 2 thereof their authority is limited to providing for city and county offices. That is plainly decided in *Dixon v. The People,* 53 Colo. 527, 127 Pac. 930.

If, therefore, the clause as to the District Attorney be given its legal effect, it is plain that he held two separate offices, and the court may not by intendment permit the general rule, established for county and city offices under an altogether different state of facts and different provisions relative thereto, to derogate from the special provision adopted as to this particular office, without violating fundamental legal principles. The provision as to the District Attorney is *sui generis,* and has no analogy to the provisions relating to county and city officers. It is special in nature, grafted upon a general plan, and its intent must be determined from the express language as though standing alone. Thus considered, there can be no doubt that plaintiff held separate and distinct offices. This fact is emphasized by the use of the word "also," which means "beside," "as well as," "too." The meaning is that plaintiff, as District Attorney, should be attorney of the city and county as well; that is, that he should be District Attorney, and besides should be attorney of the city and county; or District Attorney and attorney of the city and county, too.

In the adoption of Article XX the people rightfully believed that if they should contract the boundaries of the county, and expand those of the city, so as to make them cover the same territory, and consolidate the duplicate county and city offices into the hands of one set of officers, they would be able to find competent persons willing to perform the consolidated duties of any two offices for the salary attached to one, and that a single salary would be full compensation for the performance of such consolidated duties. The office of District Attorney and of attorney of the city and county are not duplicates, and have no duties in com-

mon, nor is there any foundation for holding that the salary of the District Attorney was a fair and just compensation for performing the duties of both offices. On the contrary, the first charter adopted under Article XX, in 1904, fixed the salary of the attorney for the city and county at $4,600.00 per annum. That charter was framed by a convention of freeholders, and ratified by a vote of the people of the city and county. We are bound to assume that the salary so authorized is no more than a fair compensation for the responsibilities and duties of the office. From the 1st of January, 1905, to the present time the District Attorney in and for the city and county of Denver has been paid the salary attached by law to his office, and the attorney of the city has been paid the salary fixed for his office by the charter.

The charter of the city of Denver, enacted by the General Assembly, fixed the salary of the city attorney at $5,000.00 per annum; yet it is contended that in framing Article XX, the General Assembly was guilty of the injustice of intending to compel the District Attorney to perform gratuitously services which that body had valued at $5,000.00 before consolidation, and which the people of the city and county, since consolidation, and up to this good day, have valued at $4,600.00 per annum.

The evils sought to be remedied plainly were: First, the denial to the people of Denver of the right of local self-government; and second, the administrations of the functions of city and county governments, in the same territory, by two sets of officers. The conclusion follows that the purpose of Article XX was to grant Home Rule to the city and county of Denver, subject to the conditions that the people establish such a government as would consolidate the functions of city and county affairs so as to be administered by one set of officers. And the manifest purpose of section 3 was to remedy the second evil by immediately setting in operation a temporary or provisional government which the people of the city and county could perpetuate in their charter.

It is also urged by defendant that the purpose of the framers of article XX by terminating the term of the then city attorney was to require the District Attorney to act as attorney of the city and county, without compensation, and thus save the salary of such attorney during the temporary government. That is a pure assumption, and since no such intention is expressed in article XX the court may not give effect to a suggestion of a merely speculative character. Legislative purpose does not become law unless it be expressed and enacted in written words. No matter how clear the purpose may be in the legislative mind, if language is not employed to make it effective, the courts cannot supply the deficiency; and the purpose fails in whole or in part, according to the insufficiency of the language. This is the fundamental principle of written law. From it follows the cardinal rule of construction that the intent must be found in the language of the instrument. If the language be clear, and capable of but one meaning, then there is no necessity or room for construction. The duty of the courts is to enforce the law as written. The policy of the law does not concern them, nor whether it seems wise or unwise, just, or unjust, when the written language is ambiguous, and may reasonably have different meanings, then, and then only, may a court consider that it conceives to be the general purpose of the enactment to aid it in resolving such ambiguity. But in respect to the language under consideration, "and the District Attorney shall also be the attorney of the city and county," there is no uncertainty or ambiguity, and there is no phrase or word in article XX which casts any doubt upon its meaning. The amendment in plain and unequivocal language ended the term of the old city attorney, created the new office of attorney of the city and county, and named a new incumbent. The right and authority to do this is clear, and the motive is of no concern of the courts. The whole situation may be thus expressed:

1.   Plaintiff held two separate offices.

2.   To each of them a salary was attached.

3. Under the general rule of law he was entitled to both salaries.

4. There is no provision in article XX which takes his case out of the operation of this rule.

"In the case of all written law it is the intent of the law that it is to be enforced. But this intent is to be found in the instrument itself. * * * That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from that meaning."

"It is not allowed to interpret what has no need of interpretation. Where an instrument is worded in clear and precise terms, when its meaning is evident, and leads to no absurd conclusions, there can be no reason for refusing to admit the meaning which the words naturally import. To go elsewhere in search of conjectures to restrict or extend it is but to elude it. If this dangerous method be once admitted, there will be no instrument which it will not render useless."

*Howell v. The People,* 7 N. M. 9-83; *Beardstown v. Virginia,* 76 Ill. 34; *Rasmussen v. Baker,* 7 Wyo. 117, 50 Pac. 819, 38 L. R. A. 733; 38 L. R. A. 772; 8 Cyc. 732; 6 A. & E. Enc. 922.

The foregoing principles are applicable in this case. To prevent the clause, "the District Attorney shall also be *ex-officio* attorney of the city and county," from being meaningless and non-effective, it is necessary to hold that it was intended that the office of attorney of the city and county should be governed by the provisions of the charter relating to the office of city attorney. That point being settled the meaning of the enactment is clear; and it may well be added that if that meaning had not been adopted and acted upon during the period of the temporary government, the proper and orderly administration of the vast legal business of the city would have been impossible. When, as here, the law is plain, the court should enforce it as written.

Paraphrasing the language of the Supreme Court of Wyoming, already quoted:

"The plaintiff was required to give attention to a very important state office, and also to a very important city and county office. His responsibilities were largely increased, and every principle of justice requires that he be compensated."

The inherent justice of this proposition appeals to all. The plain language of article XX, and every fair inference to be drawn from it, manifests the intention that plaintiff should hold these offices as separate and distinct positions, and receive the salary attached to each. No question of double salaries for consolidated duties under local government is presented, but the question is whether it was intended that a District Attorney, entitled to his salary as such, as every other District Attorney in the State was, should also be held responsible for the performance of the very important and arduous duties of attorney of the city and county of Denver without any compensation? There is nothing in article XX indicating that any such unjust imposition was intended and the answer to the question must be in the negative and the judgment accordingly reversed.

The judgment is reversed and the cause remanded to the District Court, with directions to enter judgment for plaintiff according to the prayer of his complaint.

Decision *en banc*.

Mr. Justice Allen not participating.

Opinion on petition for re-hearing.

*Per curiam*:

After careful consideration of the grounds urged for a re-hearing, the court is still satisfied that its conclusion, as to the general right of plaintiff to recover, is sound.

The defendant in error urges that in any event the plaintiff in error has no right to interest on the sum found due him as salary; thus raising a question not heretofore argued or considered.

We are of the opinion that the position is well taken.

In *Montezuma County v. Wheeler*, 39 Colo. 207, it was held that a division superintendent of irrigation, having a claim against the county for salary, was not entitled to

interest thereon. This was upon the ground that a county, being an involuntary political division of the state, shares with the state an exemption from liability for the payment of interest, in the absence of an express provision for such payment. The plaintiff in this case sues for salary due him from a municipality and the case is clearly within the above named decision.

The case of *Golden v. Western Co.*, 60 Colo. 382, in which interest was allowed on a debt due for material furnished in the construction of a water works system for the city, is distinguished from *Montezuma County v. Wheeler, supra*, and is distinguishable from the case at bar. The contract for material for the water works was entered into by the city, as the court points out, in its private or business capacity; while the claim in the case at bar is against the municipality in its governmental capacity. The Montezuma County case is conclusive upon the question of interest here raised, and we hold that no interest can be allowed on plaintiff's claim.

Another ground for holding that interest should not be allowed is that a public officer, having a claim for salary, is not a *creditor* of the State, or of a political subdivision thereof, and, therefore, such demand does not fall within the terms of the interest statute. This fact clearly distinguishes the case from the cases cited by counsel as being in conflict with the Montezuma County case. They dealt with the question of interest on instruments in writing and money due on account, where the relation of creditor and debtor plainly existed. They have, therefore, no bearing on the question here involved.

The opinion heretofore delivered will be construed as allowing judgment only as to the principal of the claim. The opinion is modified accordingly, the petition for rehearing is denied, and cause remanded to the district court with directions to enter judgment for plaintiff only for the amount of salary due and costs.

Mr. Justice Allen not participating.

Decided June 4, A. D. 1917. Rehearing denied May 6, A. D. 1918.