## No. 12,376.

LAIL ET AL. *v*. CITY AND COUNTY OF DENVER.

(297 Pac. 512)

Decided February 24, 1931.   Rehearing denied March 16, 1931.

Mr. Philip Hornbein, Mr. Wm. E. Hutton, Mr. J. P. Nordlund, for plaintiffs in error.

Mr. Thomas H. Gibson, Mr. Frank L. Hays, Mr. George Hetherington, for defendant in error.

Mr. Justice Butler delivered the opinion of the court.

William S. Lail and Federal Surety Company seek the reversal of a judgment rendered against them in an action on a bond brought by the City and County of Denver. There is involved the construction of those prolific sources of litigation, article XX of the state Constitution and the charter of the City and County of Denver.

On July 23, 1924, Lail, who then was the clerk and recorder and ex officio clerk of the City and County of Denver, was appointed by the mayor public trustee of the City and County of Denver. He took the oath of office as such, and furnished a bond to secure the faithful performance of his duties as public trustee and the payment and delivery to the person entitled to receive the same of all moneys coming into his hands as such officer. He entered upon the performance of his new duties and continued to perform the duties of both offices until June 15, 1927, when he resigned from both offices. He received in full his salary as clerk and recorder and ex officio clerk. There is no controversy as to that. Out of the moneys received by him as public trustee, he retained $7,233.60, claiming the same as part compensation for his services as public trustee. Upon Lail's refusal to pay over that

sum, this action was commenced. Lail filed a counter-claim, alleging that he was entitled to a salary of $14,-467.20 as public trustee, that he had received $7,233.60 on account, leaving a balance of $7,233.60 due him. He demanded judgment in that amount.

There were two causes of action pleaded in the complaint. The second was based upon an alleged agreement, whereby Lail is said to have agreed to accept the office of public trustee and to perform the duties thereof without any compensation additional to his salary as clerk and recorder and ex officio clerk; in other words, that he agreed to waive all salary as public trustee. Lail denied the making of such an agreement. If Lail was not entitled to such salary, the agreement was useless. If he was entitled to the salary, the agreement, if made, was contrary to public policy and therefore void. *Glavey v. United States,* 182 U. S. 595, 609, 21 Sup. Ct. 891, 45 L. Ed. 1247; *Miller v. United States,* 103 Fed. 413; *Gallaher v. Lincoln,* 63 Neb. 339, 88 N. W. 505; 19 Ann. Cas. 1075, note. The trial court properly eliminated from consideration the question concerning the agreement.

The question presented for our determination is this: Was Lail entitled to receive a salary as public trustee in addition to his salary as clerk and recorder and ex officio clerk of the City and County of Denver? He says that he was. Counsel for the City and County of Denver say that he was not.

Article XX of the Constitution was adopted in 1902. It consolidated the city of Denver and that part of the county of Arapahoe included within the boundaries of the city of Denver into a single body politic and corporate by the name of the ''City and County of Denver.'' Section 2 of article XX provides: ''The officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter; and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; but every charter shall designate the officers who

shall, respectively, perform the acts and duties required of county officers to be done by the Constitution or by the general law, as far as applicable. If any officer of said city and county of Denver shall receive any compensation whatever, he or she shall receive the same as a stated salary, the amount of which shall be fixed by the charter, and paid out of the treasury of the city and county of Denver in equal monthly payments.'' Section 3 provides that upon the adoption of article XX the terms of office of all officers of the city of Denver and of the county of Arapahoe shall terminate, except that certain designated officers of the city of Denver and of the county of Arapahoe, including ''the then clerk and ex officio recorder * * * of the county of Arapahoe,'' shall become, respectively, said officers of the City and County of Denver, and shall hold said offices until their successors are elected and qualified. No mention is made of the public trustee. Section 4 relates to the holding of a convention to adopt a charter. Section 6, as amended, contains these provisions: ''Such charter and the ordinances made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith. * * * The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters.''

The charter does not designate any officer to perform the duties of public trustee. The failure of section 3 of article XX to include the public trustee of Arapahoe county among the provisional officers, and the failure of the charter to designate an officer to perform the duties of the public trustee, is due, counsel explain—and the explanation is reasonable—to the fact that until 1921, when, in *Chambers v. People,* 70 Colo. 496, 202 Pac. 1081, this court held the public trustee to be a county officer, it was generally supposed that he was a state offi-

cer. However that may be, section 2 of article XX expressly commands that the charter "shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the Constitution or by the general law, as far as applicable." The duties of public trustee, prescribed by statute (C. L. §§5044-5049), affect not alone residents of Denver, but people in other parts of the state and in other states, and even in other countries. Those duties cannot be abolished by the charter, either expressly or by a failure to obey the mandate of the Constitution. Such failure cannot deprive the people of the right to have the duties of public trustee performed in the City and County of Denver. Upon the adoption of article XX and the charter the office of public trustee of Arapahoe county ceased to exist within the limits of the consolidated corporation, but there came into existence the office of public trustee of the City and County of Denver. In *People v. Sabin,* 75 Colo. 545, 227 Pac. 565, we held that by virtue of sections 11 and 12 of the charter amendment known as the Speer Amendment, adopted in 1916, the mayor has power to appoint the public trustee of the City and County of Denver. The charter did not consolidate the office of public trustee and the office of clerk and recorder and ex officio clerk, and the mayor has no power to make such consolidation. Unless and until such consolidation is made by amendment of the charter or by a new charter, the office of public trustee will continue to be a separate office.

Section 5047 of the Compiled Laws fixes the salary of the public trustee of counties of the first class (to which class Denver belongs) at $5,000 per year, payable from the fees collected. The mayor of Denver has the power to appoint as public trustee either a person who does not hold any other office, or a person who does. If the mayor had appointed one who did not hold any other office, the appointee would have been entitled to the statutory salary, as there is nothing in the charter that su-

persedes the statutory provision with reference thereto. By failing to fix, in its charter, the salary of the public trustee, the City and County of Denver cannot deprive the people of the services of such an officer. Until the charter fixes the salary, as provided in section 2 of article XX, the statutory salary of $5,000 prevails in the case supposed, namely, where the mayor appoints one who is not already an officer of the City and County of Denver.

The mayor, however, did not appoint to the office of public trustee one who held no other office. His appointee, Lail, already held, and he continued to hold and receive the salary attached to, the office of clerk and recorder and ex officio clerk of the City and County of Denver, an office created by the charter pursuant to section 2 of article XX. Is Lail entitled not only to the salary of such office, which has been paid to him, but also to a salary of $5,000 per year as public trustee? If he is, the judgment should be reversed; if he is not, the judgment against him should be affirmed.

Although we have determined many controversies involving the construction of article XX and the charter of the City and County of Denver, we never before have had occasion to pass upon the precise question presented by the record in this case.

Section 2 of article XX contains this provision: "If any officer of said City and County of Denver shall receive any compensation whatever, he or she shall receive the same as a stated salary, the amount of which shall be fixed by the charter, and paid out of the treasury of the City and County of Denver in equal monthly payments." Several sections of the charter are called to our attention. Section 159, being section 304 of the Municipal Code of 1927: "All fees and compensation of any kind allowed to county officers by law shall be collected by the officers designated to perform the acts and duties required of county officers and paid to the treasurer as in the charter provided, and no officer shall be paid any fee or compensation beyond that fixed by the charter." Sec-

tion 347, being section 311 of the Municipal Code of 1927: "No officer or employe shall hold or enjoy any other public office or public employment *for which he is paid any compensation* * * *." Section 24C, being section 312 of the Municipal Code of 1927: "No official or employe shall solicit or receive any pay, commission, money or anything of value, or derive any benefit, profit or advantage, directly or indirectly, from or by reason of any dealings with or service for the City and County * * * except lawful compensation or salary as such officer or employe * * *. Any violation of this section shall ipso facto work a vacancy in the office or employment of such persons so offending."

In construing these several provisions, it is helpful to bear in mind the purpose sought to be accomplished by the consolidation of the city government and the county government into what article XX calls "a single body politic and corporate."

In his dissenting opinion in *People v. Horan,* 34 Colo. 304, 318, 86 Pac. 252, Mr. Justice Gunter said that section 2 of article XX "contemplated that there should be but one set of officers to perform duties discharged formerly by two sets of officers—that is, city officers and county officers." At page 319 he said: "This reasonable construction of article XX authorizing an immediate consolidation of offices, thereby saving the expense of one set of officers, and authorizing the adoption of a charter perpetuating this wholesome change, was an influential factor in securing the adoption of the charter. It cannot be said that the article would have been adopted with this feature of present and prospective consolidation of offices absent therefrom." The reasoning of that dissenting opinion was adopted and relied upon by this court in *People v. Cassiday,* 50 Colo. 503, 506, 117 Pac. 357. Manifestly, one of the purposes of article XX was that all powers and duties theretofore pertaining to offices of the then county of Arapahoe and those pertaining to the offices of the then city of Denver should be exercised and

performed, after the consolidation, by one set of officers, each officer drawing only one salary. In *Aichele v. Denver*, 52 Colo. 183, 186, 120 Pac. 149, we said that "the economy which could be thus secured was one of the chief factors in causing the adoption of this amendment." And in *Lindsley v. Denver*, 64 Colo. 444, 455, 172 Pac. 707, we said: "In the adoption of Article XX the people rightfully believed that if they should contract the boundaries of the county, and expand those of the city, so as to make them cover the same territory, and consolidate the duplicate county and city offices into the hands of one set of officers, they would be able to find competent persons willing to perform the consolidated duties of any two offices for the salary attached to one, and that a single salary would be full compensation for the performance of such consolidated duties." The charter provisions quoted above attempted to carry out—and we hold that they did carry out—that purpose, so far as double salaries are concerned, notwithstanding the fact that, by an oversight, the charter contains no provision consolidating the office of public trustee and the office of clerk and recorder and ex officio clerk.

Lail's counsel cite *Lindsley v. Denver*, 64 Colo. 444, 172 Pac. 707, as conclusive in favor of Lail's right to recover the two salaries. That case does not support his contention. At the time of the adoption of article XX Lindsley was district attorney of the county of Arapahoe, and by virtue of section 3 of that article he became, temporarily, ex officio attorney of the City and County of Denver. He received his salary as district attorney. Appropriations were made for the payment of his salary as attorney of the City and County of Denver. The treasurer, however, refused to pay, and Lindsley sued to recover the salary. We held that he was entitled to judgment. But the office of district attorney is a state office, and the consolidation brought about by article XX was of county offices and city offices. The charter could not consolidate a state office and a city office. True, section

3 of article XX made the district attorney ex officio attorney of the City and County of Denver; but that was a mere temporary or provisional arrangement, to continue only until the adoption of a charter and the election and qualification of officers thereunder. In the Lindsley case we called attention to the last sentence in section 2 of article XX, and indicated that city officials performing "consolidated *duties*" were limited to the pay provided by the charter. We called attention to the fact that "The appointment of the district attorney to the office of attorney of the city and county was as foreign to the general plan of consolidation as would have been the appointment of the attorney general"; and that "The provision as to the district attorney is *sui generis,* and has no analogy to the provisions relating to county and city officers. It is special in nature, grafted upon a general plan * * *."

Counsel for Lail calls attention to section 347 of the charter, being section 311 of the Municipal Code of 1927, and contends that Lail's acceptance of the office of public trustee created a legal vacancy in the office of clerk and recorder and ex officio clerk; that as no one was appointed to fill the vacancy and Lail continued to perform the duties of that office, he was an officer de facto; that Lail was the de jure public trustee; and therefore that Lail was entitled to the salaries of both offices—of the former as an officer de facto, and of the latter as an officer de jure. But the section provides that no officer shall hold or enjoy any other public office "for which he is paid any compensation." That Lail was not paid any compensation for his services as public trustee is shown by his counterclaim in this case. When we read that provision in connection with other provisions of the charter and with the provisions of article XX, it is evident that its real purpose is not so much to prohibit one person from performing the duties of two offices as to forbid the payment of more than one salary to one person. As we have seen, the purpose of the Constitution and the char-

ter was to consolidate separate offices into one office, with only one salary. Even where, as here, the charter, through some oversight, fails to expressly consolidate two offices, the charter section that we are discussing prevents an officer appointed to a second office from being paid the salary of that office. If Lail had resigned his first office upon being appointed public trustee and had ceased to perform the duties and receive the salary of the first office, he would have been entitled to a salary as public trustee; but, as we have seen, he did not resign, but continued to act as clerk and recorder and ex officio clerk, and accepted payment of the salary of that office.

Counsel for the Surety Company make an argument based upon section 24C, being section 312 of the Municipal Code of 1927, already quoted in part in this opinion. It is contended that, by virtue of that section, if Lail was not lawfully entitled to the salaries of both offices, his solicitation of the salary of public trustee had the effect of ipso facto working a vacancy in the office of clerk and recorder and ex officio clerk, and that thereupon he became lawfully entitled to the salary of public trustee. That section has no application to a case where, as here, an official openly and in good faith asserts a claim to the salary of another office, the duties of which he has discharged, and where his right to such salary is fairly debatable. Besides, no successor was appointed, no proceeding was brought to oust Lail, and he continued to perform the duties and receive the salary of the office of clerk and recorder and ex officio clerk. In such circumstances, neither he nor the Surety Company is in a position to urge the creation of a supposed vacancy in support of Lail's claim in this case. A statute of New Jersey provides that when a street and water commissioner accepts another office, his former office shall become vacant. In *Oliver v. Jersey City,* 63 N. J. L. 634, 636, the court thus explains the meaning of such provision: ''After his appointment Smith continued to discharge the duties of his office as commissioner * * *.

It would therefore be a pure solecism to call the office vacant at that time except in the strictly legal sense of having no occupant with a *de jure* title. * * * It is therefore manifest that the words of the statute * * * already quoted, declaring that when a commissioner accepts another office his former office shall become 'vacant,' cannot mean, in a situation like this, that it is corporeally vacant, for the person lawfully elected to fill it remained in possession, discharging its duties. * * * The legal meaning of the words in such circumstances is that the office has no occupant who holds by a good title in law, and that the appointing power may at once be exercised to fill it, or if it is an elective office, the people may elect, and no adjudication is required to declare the vacancy, although the newly appointed or elected officer may find it necessary afterwards to resort to *quo warranto* proceedings to obtain actual possession of the office.'' Even if Lail was merely the de facto clerk and recorder and ex officio clerk, which, in the circumstances, would be the result if we held that his acceptance of the second office vacated the first, the charter would prevent his receiving the salary of the second office. We hold, however, that he was the de jure clerk and recorder and ex officio clerk. In either case, he was not entitled to the salary of public trustee, the second office to which he was appointed.

The judgment is affirmed.