No. 15,117.

MCNICHOLS, AUDITOR *v.* CITY AND COUNTY OF
DENVER ET AL.

(124 P. [2d] 601)

Decided March 30, 1942.

Mr. W. W. GRANT, Mr. MORRISON SHAFROTH, Mr. JAMES T. BURKE, Mr. DAVID ROSNER, Mr. A. F. ZARLENGO, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. ROBERT J. KIRSCHWING, Mr. WAYNE D. WILLIAMS, Mr. PHILIP HORNBEIN, Mr. THEODORE EPSTEIN, of counsel, for defendants in error.

Mr. BENJAMIN E. SWEET, Mr. HORACE N. HAWKINS, JR., Mr. CLIFFORD E. MORGAN, amici curiae.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

THIS controversy, based upon an action brought under the Declaratory Judgments Act, involves the validity of Ordinance No. 113, Series of 1941, of the City and County of Denver, a home-rule city, in which the jurisdiction

of justices of the peace, fixed by the Denver charter under the general laws of the state, is transferred, in the event of vacancies in the office of such justices, to associate municipal judges. the trial court, on the facts stipulated by the pleadings, found said ordinance to be valid, and ruled that the annual salary of associate municipal judges, while acting as justices of the peace, in case of vacancies in the latter offices, shall be $3,000 per year as fixed by the ordinance, and judgment was entered accordingly.

The immediate objective sought by the enactment of this ordinance is to permit an increase in the salaries of those acting as justices of the peace, which the charter fixed at $2,000 per annum, by authorizing a salary of $3,000 a year, whenever the mayor, in case of a vacancy in the office of a justice of the peace from time to time, designates an associate municipal judge to act as a justice of the peace, and, when so designated, that such designated official shall have all the jurisdiction of justices of the peace under the Constitution and general laws of the state. There is no dispute as to the facts, nor is there any question raised as to the appropriateness of the proceeding under the Declaratory Judgments Act. It is conceded by all parties to the litigation, for which there seems to be considerable justification, that the objective is laudatory, and that the salaries prescribed by the charter for justices of the peace are entirely inadequate for the services performed and the responsibilities involved; but, however worthy the object, we are controlled by the applicable law.

The crux of the controversy is whether the method employed to accomplish this objective is valid under article XX of the Constitution of Colorado and certain sections of the Denver charter. Those portions of sections of the Constitution, Denver charater, and ordinance, here involved, are as follows:

"The officers of the city and county of Denver shall be such as by appointment or election may be *provided*

*for by the charter;* and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; * * * every charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the Constitution or by the general law, as far as applicable. If any officer * * * shall receive any compensation, * * * the * * * salary * * * shall be fixed by the charter, * * *." Section 2, article XX, state Constitution.

"The people of the City and County of Denver are hereby vested with and they shall always have the exclusive power in the making, altering, revising or amendtheir charter * * *." Section 4, Ibid.

"The citizens of the City and County of Denver shall have the exclusive power to amend their charter * * *." Section 5, Ibid.

"Justices of the peace shall be appointed by the mayor for two-year terms and until their successors are appointed and qualify, and they can be removed for cause. * * * Any justice shall, at the request of the mayor, perform the duties of police magistrate." Section 176, Denver charter (as amended in 1933).

"The justice courts of the city and county shall consist of such number of justices, not less than two, as shall be fixed by ordinance, who shall have and exercise all the powers and duties provided for justices of the peace by the Constitution and general laws of the state, * * *." Section 177, Ibid.

"The following annual salaries shall be paid to officers named in the various departments: * * * each justice of the peace * * * two thousand dollars; * * *." Section 318, Ibid.

"Any and all vacancies in any elective or appointive offices, occasioned by death, resignation or otherwise, and not otherwise provided for, shall be filled by the mayor." Section 321, Ibid.

"The Mayor may appoint one or two Associate Munici-

pal Judges, whose term of office shall be two years, or until their successors shall be appointed by the Mayor and duly qualified. * * * Each of said Associate Municipal Judges shall have and possess all the powers and jurisdiction of the Municipal Judge in relation to the Municipal Court and matters pending therein, * * *. In case a vacancy shall exist in the office of Justice of the Peace of the City and County of Denver, the Mayor may designate from time to time. one or both of said Associate Municipal Judges to act as Justice of the Peace of the City and County of Denver and, when so designated, the said Associate Municipal Judges shall have and possess all the powers and jurisdiction of said Justice of the Peace, under the Constitution and statutes of the State of Colorado and the Charter * * *. The. annual salary of said Associate Municipal Judges shall be Three Thousand Dollars ($3,000) each, * * *." Section 12, Ordinance No. 113, Series of 1931.

In view of the foregoing constitutional and charter provisions, we are confronted with the question: Is the provision in ordinance 113, supra, granting permission to the mayor to designate associate municipal judges to act as justices of the peace in case of vacancies in the latter office, valid? We are of the opinion that it is not. Section 2 of article XX, supra, requires that every charter must designate the officers "who shall, respectively, perform the acts and duties required of county officers to be done by the Constitution or by the general law." This language of the Constitution is satisfied by section 177, supra, Denver charter, in that it provides that justices of the peace "shall have and exercise all the powers and duties provided for justices of the peace by the Constitution and general laws of the state." There we have an express designation in the charter of the officer who shall perform the acts and duties required of justices of the peace (who are county officers) under the Constitution and general laws of the state. A justice of the peace, under the provisions of

the state Constitution is a county officer. *Thrush v. People ex rel.*, 53 Colo. 544, 127 Pac. 937. The enactment of ordinance 113, supra, is an attempt by the city council to transfer to associate municipal judges powers expressly given, under the Denver charter, to justices of the peace, the power of the former being limited to the enforcement of penalties and collection of fines imposed for violation of any of the provisions of the charter or of said ordinance. This attempt, if consummated, would in effect be an amendment of the charter, which power of amendment, under sections 4 and 5 of article XX, supra, is exclusively reserved to the people of Denver.

It is contended that this method of the transfer of power is in effect only as to associate municipal judges when vacancies exist. Is there a legal basis for the existence of vacancies within the meaning and purpose of ordinance 113, supra? For guidance, we look to the Constitution and the Denver charter. Our government is one of laws and not of men. The officers of the municipality of Denver "shall be such as by appointment or election may be provided for by the charter." Section 2, article XX, supra. The charter provides for the appointment of at least two justices of the peace, "who shall have and exercise all the powers and duties provided for justices of the peace by the Constitution and general laws of the state." Sections 176, 177, supra. Any vacancy in such offices "shall be filled by the mayor." Section 321, supra. This provision is mandatory. This section does not permit a fictional vacancy, such as is contemplated by ordinance 113, supra. Mandamus would lie to compel the mayor to fill any vacancy in the office of justice of the peace, at least to the number of two, as required by the charter. 35 Am. Jur., p. 6, §226. The discretion of the mayor as to whom he appoints, except as it may be limited by the charter, cannot be controlled by mandamus. "When an office becomes vacant it must be filled as the law provides;

* .* * ." 46 C.J., p.. 976, §125. The nonperformance .of a mandatory public duty, such as filling vacancies occurring in offices required by the social and govern-. mental needs of a community, suggests mandamus as an adequate judicial remedy.

■■ Under section 2, article XX, of the Constitution, where any officer is entitled to compensation, he shall receive a stated salary, "the amount of which shall be fixed by the charter." Justices of the peace are appointed officers under the charter, receiving compensation. The salary of a justice of the peace is fixed by the charter at the sum of $2,000 per annum. Charter section 318, supra. Ordinance 113, supra, is an attempt to do indirectly what cannot be done directly—increase the salaries of the individuals who are performing acts as justices of the peace under the general law. Only by an amendment to the charter can the objective here sought be legally attained. By charter, to satisfy section 2, article XX, the city could have designated officers by a different title than "justices of the peace," such, for instance, as "municipal judge"; but having designated them otherwise, the city council has no power to change such designation by ordinance. The exclusive power of charter amendment is, under sections 4 and 5, article XX, of the Constitution, reserved to the people of Denver.

The charter not being silent as to justices of the peace, their jurisdiction and salaries, the case of *People v. Sabin,* 75 Colo. 545, 227 Pac. 565, is inapplicable to the question before us. In *Lail v. Denver,* 88 Colo. 362, 297 Pac. 512, there was involved the problem of one officer filling two official positions and claiming the salaries for both. We have here no such issue. In *People ex rel. v. Pickens,* 91 Colo. 109, 12 P. (2d) 349, we were concerned with legislative power of the city of Denver over a local and municipal matter authorized by section 6, article XX, supra, and we held that in view of that section, the city council had authority to create a mu-

nicipal court, with jurisdiction over "all cases arising under the ordinances of the City and County of Denver." Here we have the problem of the exercise of jurisdiction of justices of the peace under the Constitution and general laws of the state, not by officers designated for that purpose by the charter, but by employees (section 315, Denver charter), selected under a city ordinance and whose compensation is not fixed by the charter.

The implications of a construction of article XX of the state Constitution and the Denver charter, for which counsel for the city contend, must be apparent. To follow such a course would not only clearly be contrary to law, but also might be an entering wedge which eventually would undermine the structural integrity of home-rule cities generally.

The judgment is reversed and the case remanded, with directions to enter judgment in harmony with this opinion.

MR. JUSTICE BURKE concurs specially.

MR. JUSTICE BAKKE and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE BURKE concurring specially.

In my opinion no justiciable question is presented by this record. There is no pretense of an issue raised by regular procedure. The action masquerades as one for a declaratory judgment under sections 78 to 92, chapter 93, '35 C.S.A. The only applicable portion thereof provides for such a procedure "to declare rights, status, and other legal relations * * * in which a judgment or decree will terminate the controversy or remove an uncertainty. * * * All persons shall be made parties who have or claim any interest which would be affected by the declaration."

When this action was started the ordinance had been passed but no "associate municipal judges" had been appointed. The parties are the city auditor, the city, and the mayor. The questions presented, it is said,

are propounded by the auditor, i.e., May the mayor, under his authority to fill vacancies, require an associate municipal judge to act as a justice, and if so, can the auditor approve his pay at $3,000 per annum? This is, on its face, absurd. Whether the mayor can so order is no concern of the auditor. Under the ordinance the mayor can appoint associate municipal judges. If he does so their pay is fixed by the ordinance and the auditor must allow it. No one questions or could question this. Whether they act as justices or not is, as to their salaries, wholly immaterial.

Assuming now that it is the mayor who wishes enlightenment. If the work is too heavy for two justices the mayor can appoint others. If his authority to require municipal judges to act as justices rests upon his power to fill vacancies it is self-evident it cannot exist because he can fill those vacancies as easily as he can make the order. They exist, if at all, simply because of his neglect to perform his duty; hence the emergency which it is pretended justifies a violation of Constitution or charter, or their amendment by ordinance, is no emergency, since it can be removed in five minutes. Moreover, when this suit was heard below there were no vacancies, so far as the record discloses there might never be, and so far as the law permits there could never be. Hence even under the ordinance the mayor could never, while vacancies created by the mayor's failure to act existed, assign the duties of justice to an associate municipal judge. It thus conclusively appears that no right, status, or other legal relation is here presented for adjudication. No person holding or claiming the office of justice or that of associate municipal judge is here, and no one whose rights have been or may be prejudiced by an associate municipal judge acting as justice is here. Hence, if a controversy exists, no pronouncement here can legally terminate it. It thus appears that the facts furnish no support for this or any other kind of action. It is, on its face, a fictitious pro-

ceeding. But we are told that this objection is not raised. What of it? Must this court sit to adjudicate every street squabble about what the law might be if the impossible happened simply because the disputants so stipulate?

So much for the record. But what of the known facts? Courts take judicial notice of matters of common knowledge and the following facts are generally known throughout the city and state.—Denver had two justices. They were overworked and inadequately paid. Amendment of the city charter provided a slow, burdensome and doubtful remedy. So the council passed an ordinance, the justices resigned, the mayor appointed them as associate municipal judges, leaving their former offices unfilled, all before this cause came to us. Even were we forbidden to know what all interested persons of intelligence know, these facts have been brought home to us judicially. They were frankly stated by counsel in oral argument before this tribunal, in open court, with the observation that his opponents would not deny them, and they did not. So they stand admitted and, if material, and they are vital, they are a part of this record. A logical statement of the problem presented below, if any such was presented, is, If the justices resign and are appointed municipal judges may the mayor then, under a pretense of a valid vacancy in the office of justice, assign its duties to a municipal judge? But the justices have since resigned and have been appointed municipal judges and are unquestionably entitled to their pay as such. It follows that if this ever was a case it is now moot. If not, still the dispute, if any, disclosed by the record, is not the dispute, if any, which now exists; and the dispute, if any, which now exists does not appear from the record. However, assuming that the questions resolved by the court's opinion are properly raised here, as the court has now held, I concur in that resolution.

The cause should be dismissed at plaintiff's costs.

Mr. Justice Hilliard dissenting.

In the event of vacancy in the office of justice of the peace in the City and County of Denver, may the Mayor appoint or designate (synonymous terms — Webster) thereto an individual, otherwise qualified, who happens to be an associate municipal judge? I think the city council, proceeding by formal ordinance, as here, was competent to clothe the Mayor with that power. The duties of the two offices do not conflict, and I know of no specific inhibition against making such an appointment. The charter provision is, that "No officer shall hold or enjoy another public office * * * for which he is paid any compensation." Charter, §311. "Its real purpose," we have said, "is not so much to prohibit one person from performing the duties of two offices as to forbid the payment of more than one salary to one person." *Lail v. Denver*, 88 Colo. 362, 297 Pac. 512. In that case, Lail, who was both clerk and recorder, and public trustee (appointed to both positions by the Mayor, but at different times), each of which offices carried a salary, already having received the salary for clerk and recorder, sought to enforce payment of the salary provided for the public trustee. He was denied recovery. Mr. Justice Butler, author of the court opinion, discoursing further in the case, said: "As we have seen, the purpose of the Constitution and the charter was to consolidate separate offices into one office, with only one salary. Even where, as here," said the distinguished jurist, "the charter, through some oversight, fails to expressly consolidate two offices, the charter section that we are discussing prevents an officer appointed to a second office from being paid the salary of that office. If Lail had resigned his first office upon being appointed public trustee and had ceased to perform the duties and receive the salary of the first office, he would have been entitled to a salary as public trustee; but, as we have seen, he did not resign, but continued to act as clerk

and recorder * * *, and accepted payment of the salary for that office."

Here, if under the administration of the ordinance in question, it shall develop that one holding the office of associate municipal judge—a position carrying a salary —without resigning therefrom or ceasing to draw the salary therefor, accepts a designation as justice of the peace, also carrying a salary, nothing untoward can occur unless, motivated as was Mr. Lail in *Lail v. Denver, supra,* on taking over the duties of the latter office, he shall, in addition to the salary already paid him as an associate municipal judge, contend he is entitled to the second salary as well. The Lail case is a conclusive answer to any such claim.

My conviction is that nothing presented to the trial court constituted a justiciable question, and dismissal might well have been the order there. For that reason, and because of steps taken by the parties pursuant to the trial court decree, the record on error considered, dismissal should be the sum of our duty on review. But, since we have accepted reviewal jurisdiction, and do not dismiss, I think the judgment should be affirmed.

Mr. Justice Bakke concurs in this opinion.