No. 26301

International Brotherhood of Police Officers, Local No. 127; Robert Luze, President of the International Brotherhood of Police Officers, Local No. 127; Denver Sheriffs Protective Association, a Colorado non-profit Corporation; John P. Gargaro, Mose Trujillo; and all other City and County of Denver Deputy Sheriffs similarly situated v. City and County of Denver, a Municipal Corporation; George A. Canjar, Manager of Safety and Excise, City and County of Denver; William R. Nelson, Director of Corrections, City and County of Denver; George C. Seaton, Chief of Police, City and County of Denver

(521 P.2d 916)

Decided April 29, 1974.

Geer, Goodwin & Chesler, P.C., Robert E. Goodwin, for plaintiffs-appellees.

Max P. Zall, City Attorney, Brian H. Goral, Assistant, for defendants-appellants.

MR. JUSTICE DAY delivered the opinion of the Court.

On this appeal, the City and County of Denver is appellant challenging a judgment of the Denver district court which held that Denver deputy sheriffs have the general police

power and duties as provided by statute for all sheriffs in the respective counties of Colorado. Appellee, International Brotherhood of Police Officers, plaintiff in the district court, is an association in which members of the Denver Sheriffs' departments have affiliation.

■ The judgment below arose out of an action filed by appellees seeking a declaratory judgment that all persons who hold the title of deputy sheriff of the City and County of Denver have the general legal power and authority to make arrests for all violations of the law. The City and County of Denver and its municipal subsidiaries, named defendants because they denied such authority, filed a motion to dismiss which the district court denied. Following hearings on the question, the district court found the Colorado statutes enumerating the powers and duties of a county sheriff to apply and upheld the appellees' position. This appeal was then brought. The only question presented is whether deputy sheriffs of the City and County of Denver have such legal authority, constitutional or statutory. We hold they do not and reverse.

Appellees' position is that the authority for deputy sheriffs in Denver is granted by C.R.S. 1963, 35-5-16, which grants sheriffs the authority to arrest. This section is made inapplicable to Denver by reason of their charter provisions and Colo. Const. art. XX, § 6, which states:

"The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, *except* insofar as superseded by the charters of such cities and towns * * *." (Emphasis added.)

■ The Colo. Const. art. XX, which authorized the creation of the City and County of Denver as one body politic, fully enumerates the power and authority of home rule cities and towns. With regard to the legal character of the offices held by Denver's public officials the article is most explicit. Section 2 of that article states:

"The officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter; and the *jurisdiction,* term of office, *duties* and qualifications of all such officers shall be such *as in the*

*charter may be provided; but the charter* shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable. * * *" (Emphasis added.)

This specific provision vests in Denver the exclusive control over public officers, their powers and duties. Other sections of Article XX make it clear that Denver's power to determine the limits of their public officer's authority, *by charter or amendment to their charter* is all exclusive. *See,* for example, *id.* § 4 (exclusive power to revise charter); *id.* § 5 (exclusive power to amend or adopt charter); *id.* § 6(a) (exclusive control over creation and terms of municipal officers). *People ex rel. Fairall v. Sabin,* 75 Colo. 545, 227 P. 565 (1924).

Prior to the creation of Denver as both a city and a county, there was a county sheriff (Arapahoe) and a city police department. Upon adoption of Amendment XX to the constitution, there was a provision for immediate transfer of government, to wit: "terms of office of all officers of the city of Denver and of all included municipalities and of the county of Arapahoe *shall terminate* * * * and said *chief of police* shall be *ex-officio sheriff* of the city and county of Denver * * *". (Emphasis added.) Colo. Const. art. XX, § 3.

This provision terminated the county office of sheriff in Denver and, together with the previously mentioned enabling provisions of article XX, reposed in the people of Denver for later decision by adoption of their charter whether to create the office of sheriff. *McNichols v. Denver,* 109 Colo. 269, 124 P.2d 601 (1942). As such, then, there was no office of county sheriff. *Arnold v. Hilts,* 61 Colo. 8, 155 P. 316 (1916).

If there be legal authority for deputy sheriffs to make arrests, it must originate in the charter. There is no such provision. In lieu of the office of sheriff, Denver established a police department by charter. *Denver Charter* § A9.4. The Manager of Safety is the *ex-officio* sheriff. The police department is directed to faithfully enforce the laws, *id.,* § A9.4-1 and is specifically authorized to make arrests. *Id.*

In contrast, the Manager of Safety, joined as a defendant

here, has not exercised his authority under the charter to grant the authority to arrest to deputy sheriffs, *id.,* § § A9.1, A9.2. Their duties, as delineated under the existing regulations, are limited to service of process, acting as bailiffs and limited police custodial duties within the confines of Denver's courts and detention facilities at the county jail and the Denver General Hospital. Nowhere are they granted the general police powers by charter or ordinance or by deputization from the Manager of Safety. We find no constitutional basis for the exercise of that power.

■ In summary, there is no authority, constitutional or statutory, granting to deputy sheriffs of the City and County of Denver the same general police powers given sheriffs and their deputies in other counties. Departmental rules and directives of the Manager of Safety govern a deputy sheriff's duties in Denver. Since the Manager has limited their powers and duties, they have no other by operation of general state law.

The judgment of the district court is reversed.