**WALGREEN CO., an Illinois corporation, Plaintiff–Appellee,**

v.

**Alan N. CHARNES, Manager of Revenue for the City and County of Denver, State of Colorado, and City and County of Denver, a municipal corporation, Defendants–Appellants.**

**No. 90SA263.**

Supreme Court of Colorado, En Banc.

Oct. 28, 1991.

As Modified on Denial of Rehearing Dec. 3, 1991.

Eiberger, Stacy, Smith & Martin, Raymond W. Martin, Rodney L. Smith, Roy A. Adkins, Denver, for plaintiff-appellee.

Daniel E. Muse, City Atty., Robert F. Strenski, Asst. City Atty., Denver, for defendants-appellants.

Colorado Ass'n of Commerce and Industry, Patrick C. Boyle, Lentz, Evans and King, P.C., Robert A. Wherry, Jr., Denver, for amicus curiae Colorado Ass'n of Commerce and Industry.

Justice VOLLACK delivered the Opinion of the Court.

The City and County of Denver (Denver) appeals from a district court ruling that sections 53–56 and 53–124 of the Denver municipal code do not supersede a state statute regarding appellate procedures governing contested sales and use taxes in section 29–2–106.1, 12A C.R.S. (1986). We affirm.[1]

I.

On December 12, 1988, the Denver Manager of Revenue (revenue manager) issued Walgreen Co., an Illinois corporation (Walgreen), a notice of assessment and demand for payment of use taxes (demand) pursuant to article III of chapter 53 of the Revised Municipal Code of the City and County of Denver (DRMC). Denver assessed taxes on Walgreen's use of preprinted advertising inserts distributed in conjunction with *The Rocky Mountain News* and *The Denver Post* between July 1, 1985, and June 30, 1988.[2] The demand stated that if Walgreen failed to pay the use taxes, Denver would proceed to collect the assessed taxes in accordance with the provisions of the DRMC. Walgreen was not assessed a sales tax in the demand.

1. Section 13–4–102(1)(b), 6A C.R.S. (1987), grants this court jurisdiction over appeals when the constitutionality of a statute is at issue.

2. While taxes were assessed as early as July 1, 1985, Walgreen contests the assessment commencing on January 1, 1986, when § 29–2–106.1 became operative.

Walgreen challenged the assessment and requested a hearing before the revenue manager. A hearing was held, and the revenue manager affirmed the original assessment. Walgreen appealed to the Denver District Court.

During its appeal, Walgreen argued to the district court that appellate procedures governing *both* the sales and use tax articles of the DRMC were *ultra vires*, null, void, and unconstitutional, and that Walgreen's appeal to the district court was properly governed by state appellate procedures found in section 29-2-106.1. Denver contended that the DRMC's appeal procedures superseded the state procedures. The district court found for Walgreen.

In support of its arguments, Denver relies on sections 53-56 and 53-124 of the DRMC.[3] Those sections allow taxpayers aggrieved by the manager's decision to have that decision reviewed pursuant to Rule 106(a)(4) of the Colorado Rules of Civil Procedure. Sections 53-56 and 53-124 of the DRMC limit the standard of review of the manager's decision to abuse of discretion or excess of jurisdiction. The appeal procedure provides the exclusive remedy for review of the manager's decision. Rule 106(a)(4) gives district courts authority to fashion relief where "any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion." Review is limited to abuse of discretion or excess of jurisdiction.

In support of its arguments, Walgreen relies on section 29-2-106.1.[4] This section

---

3. With respect to sales tax appeal procedures, § 53-56 of the DRMC provides as follows:

**Sec. 53-56. Manager's decision reviewable.**

Should the taxpayer be aggrieved by the final decision of the manager, the taxpayer may proceed to have the same reviewed under Colorado Rule of Civil Procedure 106(a)(4), or such similar procedure for the issuance of a writ in the nature of certiorari, only by the district court for the second judicial district of the state. The petition or complaint for review by the district court must be filed within thirty (30) days from the entry of the manager's decision and shall be the exclusive remedy to review the decision. Court proceedings shall be governed by the Colorado Rules of Civil Procedure as amended from time to time. Any party, including the city, may appeal the decision of the administrative tribunal and, also, the decision of the district court, using all appellate and extraordinary proceedings available. Unless otherwise provided by the Colorado Rules of Civil Procedure, and notwithstanding the provisions of section 29-2-106.1, C.R.S., the standard of review by the district court shall be to determine only whether the manager has exceeded the jurisdiction or abused the discretion vested by this article in such office.

The language of § 53-124 of the DRMC, with respect to use tax appeal procedures, is identical to that of § 53-56, except as highlighted below:

**Sec. 53-124. Manager's decision reviewable.**

Should the taxpayer be aggrieved by the final decision of the manager, the taxpayer may proceed to have the same reviewed under Colorado Rule of Civil Procedure 106(a)(4)*[,]* or such similar procedure for the issuance of a writ in the nature of certiorari, only by the district court for the second judicial district of the state. The petition or complaint for review by the district court *under such procedure* must be filed within thirty (30) days from the entry of the manager's decision and shall be the exclusive remedy to review the decision. Court proceedings shall be governed by the Colorado Rules of Civil Procedure as amended from time to time. Any party, including the city, may appeal the decision of the administrative tribunal, and, also, the decision of the district court, using all appellate and extraordinary proceedings available. Unless otherwise provided by the Colorado Rules of Civil Procedure, and notwithstanding the provisions of section *106.1, article 2, title 29, of the Colorado Revised Statutes,* the standard of review by the district court shall be to determine only whether the manager has exceeded the jurisdiction or abused the discretion vested by this article in *the* office.

(Emphasis added.)

4. The pertinent provisions of § 29-2-106.1 provide as follows:

(7) Appeals from the final determination of the executive director may be taken in the same manner as provided in and shall be governed by section 39-21-105, C.R.S., by any party bound by the executive director's decision. Any such appeal shall be heard de novo and shall be heard as provided in section 39-21-105, C.R.S., except as follows: If the appellant is a local government, the taxpayer shall have the burden of proof as to all factual matters, and the appellant shall have the burden with respect to any legal determination of the executive director of the department of

also allows taxpayers to appeal final determinations of local governments. Such appeals, however, shall be heard *de novo* and are governed by section 39–21–105, 16B C.R.S. (1982). Section 39–21–105 confers jurisdiction on district courts to hear and determine such appeals, and also states that "[t]he district court shall try the case de novo, reviewing all questions of law and fact, such review being conducted in accordance with the Colorado rules of civil procedure." § 39–21–105(2)(b).

The conflict between the two appellate schemes, thus, is whether an aggrieved taxpayer has a right to *de novo* review of a final determination upholding a local use or sales tax assessment. We now individually address Denver's contentions.

## II.

■ Denver contends that Walgreen does not have standing to challenge the constitutionality of the sales tax appeal procedure, because Walgreen was never assessed a sales tax, and thus suffered no injury in fact.[5] We disagree. We hold that because the DRMC must be construed *in pari materia* in order to effectuate legislative intent, Walgreen had standing to challenge the appellate procedures for both use and sales tax assessments.[6]

"City charters and ordinances pertaining to the same subject matter are to be construed *in pari materia* to ascertain legisla-

tive intent and to avoid inconsistencies and absurdities." *Darnall v. City of Englewood,* 740 P.2d 536, 537 (Colo.App.1987) (citing *Whisler v. Kuckler,* 36 Colo.App. 200, 538 P.2d 477 (1975), *rev'd* on other grounds, 191 Colo. 260, 552 P.2d 18 (1976)). *See also* § 2–4–201, 1B C.R.S. (1980). Similarly, "[a] tax statute, like any other statute, must be construed 'to give consistent, harmonious and sensible effect to all its parts.'" *Howard Elec. and Mechanical, Inc. v. Department of Revenue of Colorado,* 771 P.2d 475, 477 (Colo.1989) (quoting *J.A. Tobin Constr. Co. v. Weed,* 158 Colo. 430, 407 P.2d 350 (1965)).

■ We have held that use taxes are not separate from, but are complementary to, sales taxes. *Howard Elec.,* 771 P.2d at 477 (citing *Matthews v. Department of Revenue,* 193 Colo. 44, 562 P.2d 415 (1977)). The two taxes were "'designed to form a comprehensive tax system.'" *Id.* (quoting *Kentucky v. City of Elizabethtown,* 435 S.W.2d 78, 79–80 (Ky.App.1968)). We explained in *Matthews* that the use tax prevents consumers of retail products from purchasing out of state in order to avoid paying a Colorado sales tax. *Matthews,* 193 Colo. 44, 47, 562 P.2d 415, 417 (1977). Where a seller has not collected a sales tax, the Colorado consumer will accordingly be liable for a use tax. *J.A. Tobin Constr. Co. v. Weed,* 158 Colo. 430, 435, 407 P.2d 350, 353 (1965). This structure "equalize[s] the tax burden among Colorado purchas-

revenue which the appellant seeks to reverse; except that the local government shall always have the burden of proof with respect to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax and with respect to the issue of whether the taxpayer is liable as a transferee of property of another taxpayer, but not to show that the transferor taxpayer was liable for the tax; and except that the executive director may, at his request, be a party to any such appeal.

(8)(a) If a deficiency notice or claim for refund involves only one local government, in lieu of requesting a hearing pursuant to subsection (3) of this section, the taxpayer may appeal such deficiency or denial of a claim for refund to the district court.

(b) The taxpayer shall appeal to the district court pursuant to this subsection (8) within thirty days after the taxpayer's exhaustion of local remedies. The taxpayer shall have no right to such hearing if he has not exhausted

local remedies or if he fails to request such hearing within the time period provided for in this subsection (8)....

....

(c) Such appeal shall be conducted in the same manner as provided in section 39–21–105, C.R.S.; except that venue shall be in the district court of the county wherein the local government whose decision is being appealed is located.

5. The sales tax appeal procedure is found in DRMC 53–56. Denver does not challenge Walgreen's standing to contest the appellate procedures governing the use tax appeal procedure.

6. *In pari materia* is a rule of statutory construction which requires that statutes relating to the same subject matter be construed together in order to gather the legislature's intent from the whole of the enactments. *Black's Law Dictionary* 791 (6th ed. 1990).

ers." *Matthews*, 193 Colo. at 47, 562 P.2d at 417. We have thus noted that "only the most abstract legalistic approach" could justify viewing the use tax separately from the sales tax. *Id.* at 46–47, 562 P.2d at 417.

Walgreen challenged the validity of the appeal procedures for both use and sales tax determinations pursuant to DRMC sections 53–56 and 53–124. Sections 53–56 and 53–124 provide identical means for challenging sales or use tax assessments.[7] Denver contends that because no sales tax was assessed against Walgreen, the district court's judgment with respect to the sales tax should be reversed. Denver concedes, however, that the challenged appeal provisions are contained in both the use tax and sales tax articles.

■ The use and sales taxes are part of a comprehensive legislative scheme to equally tax the purchase of goods. Changing the appellate procedures for one and not the other would therefore create an absurd incongruity. Colorado consumers challenging use taxes assessed on goods purchased out-of-state would be required to comply with appellate procedures different than those imposed on goods purchased in-state. *See, e.g., Matthews*, 193 Colo. at 46–47, 562 P.2d at 417–18 ("[T]he state cannot structure the tax system to discriminate against out-of-state purchases.") (citing *Henneford v. Silas Mason Co.*, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937)).

We conclude that Walgreen has standing to challenge both appellate procedures found in DRMC sections 53–56 and 53–124, because they are identical and are part of the same tax scheme.

### III.

Denver next contends that the definition of local government set forth in section 29–2–106.1(10), 12A C.R.S. (1986), does not include the City and County of Denver. We disagree.

Section 29–2–106.1(10) provides that "[a]s used in this section, local government means home rule and statutory cities, towns, cities and counties, and counties." Denver contends that the phrase "home rule and statutory" limits the remainder of the section so that it only includes local governments that are both home rule *and* statutory. This is the proper construction of subsection (10), according to Denver, because section 29–2–106.1 was simultaneously enacted with sections 29–2–105(2), (3), and (4), wherein "or" is used to separate "home rule" and "statutory." Denver contends that the General Assembly would have chosen "or" if it intended a broad interpretation in section 29–2–106.1.

■ We begin by noting that, when construing a statute, the intent of the legislature is to be ascertained and given effect wherever possible.[8] *People v. Sneed*, 183 Colo. 96, 514 P.2d 776 (1973). Statutes cannot be construed in such a way as to defeat obvious legislative intent, *People v. Meyers*, 182 Colo. 21, 510 P.2d 430 (1973), and the best guide to intent is the declaration of policy which forms the initial part of an enactment. *St. Luke's Hosp. v. Industrial Comm'n*, 142 Colo. 28, 349 P.2d 995 (1960).

■ We also note that, where a statute is ambiguous, the court may consider the legislative declaration and the consequences of a particular construction when determining the General Assembly's intent. § 2–4–203, 1B C.R.S. (1980). Statutes must be construed as a whole. *Dunbar v. Gym of America*, 177 Colo. 97, 493 P.2d 660 (1972).

■ In ascertaining whether subsection (10) should be narrowly construed so as to only apply to both home rule and statutory entities, we first look to the legislative intent of section 29–2–106.1. Section 29–2–106.1 is titled "Deficiency notice—dispute

---

7. *See* discussion in part I. and notes 3 and 4, *supra,* for their provisions.

8. The district court found Denver to be one of the largest local governments in the state, and the only local entity which is both a city and county. The district court concluded that Den-

ver was expressly included in § 29–2–106.1(10) based on its plain meaning. We note that the order of the terms in the statute may give rise to confusion and thus proceed to analyze the legislative intent in enacting the statute.

resolution." Subsection (1) of section 29–2–106.1 provides:

> The general assembly hereby finds, determines, and declares that the enforcement of sales and use taxes can affect persons and entities across the jurisdictional boundaries of taxing jurisdictions and that dispute resolution is a matter of statewide concern for which the procedures set forth in this section shall be applied uniformly throughout the state.

Subsection (1) evinces legislative intent that because sales and use taxes are matters of statewide concern, their enforcement shall be uniform throughout the state of Colorado. The section continues by detailing the nature of the appellate process.

Denver's proposed construction places Denver beyond the scope of section 29–2–106.1(10). The General Assembly clearly did not intend this result. By declaring the enforcement of sales and use taxes to be a matter of statewide concern, the General Assembly intended to require all local taxing jurisdictions to follow the same appellate procedures. Exempting Denver from the scope of 29–2–106.1 would frustrate the General Assembly's express attempt to create uniform, statewide dispute resolution procedures for contested sales and use taxes. We conclude that Denver is included within section 29–2–106.1(10)'s definition of local government.

## IV.

Denver argues that because it is a home rule city, it has authority to regulate both the assessment of use and sales taxes as well as all incidents attached thereto, namely, the appeal process following municipal tax assessments contested by taxpayers.[9]

Thus Denver contends that the appellate process accompanying contested municipal taxes is a matter of local concern for which the General Assembly is without authority to regulate. The issue before this court, therefore, is whether the appellate process is a matter of statewide concern subject to statewide regulation, or whether it is a matter of local concern subject to municipal regulation.

 We have recently reviewed the spheres of regulatory authority belonging to the state and its political subdivisions. *City and County of Denver v. State,* 788 P.2d 764, 766–68 (Colo.1990). Simply stated, home rule cities may regulate matters of local concern while the General Assembly may regulate matters of statewide concern. *Id.* at 767. Both the state and its subdivisions may regulate matters that are mixed, involving both state and local interests. The spheres of authority do not overlap, however, when matters of statewide concern are at issue. *Id.* The General Assembly alone regulates in this area, except where municipal authority has been created by constitution or state statute.[10] *Id.*

This court has not adopted a particularized test that segregates local matters from matters of statewide concern. Rather, we have made determinations on an *ad hoc* basis with respect to each challenged regulation, considering the need for statewide uniformity, the regulation's extraterritorial impact, and finally, other state and local interests. *Id.* at 767–68. We have given great weight to legislative declarations in the past, but have noted that they are not binding on this court. *Id.* at 768 n. 6.[11]

---

9. Denver discusses numerous differences between § 29–2–106.1 and DRMC §§ 53–56 and 53–124. The only difference that was challenged in the district court, and thus ripe for our review, was the procedure concerning appellate review.

10. Neither party contends that the appellate process for challenged use or sales taxes involves a combination of state and local interests and is therefore subject to simultaneous regulation by the state and the municipality.

11. See also *National Advertising Co. v. Department of Highways,* 751 P.2d 632, 635 (Colo.1988) ("In light of the recognized legislative authority to declare the public policy of the state in matters of statewide concern, we have accorded great weight to the General Assembly's declaration that a particular matter is of statewide interest or concern" (citations omitted)); *Century Elec. Serv. and Repair v. Stone,* 193 Colo. 181, 183, 564 P.2d 953 (1977) ("A legislative determination that a matter is of state-wide interest is entitled to great weight." (citations omitted)).

## A. Uniformity

We begin by evaluating the interest in statewide uniformity. The General Assembly declared that dispute resolution of locally imposed use and sales taxes was a matter of statewide concern, and therefore specified that appellate procedures shall be uniformly applied throughout the state. § 29–2–106.1(1), 12A C.R.S. (1986). The General Assembly also declared that locally imposed sales and use taxes affect the flow of commerce within the state and that its purpose in enacting the municipal sales or use tax article, *see* § 29–2–101, 12A C.R.S. (1986), was to provide a higher degree of uniformity in any sales taxes imposed by local governments. *See* County and Municipal Sales or Use Tax, §§ 29–2–101 to –113, 12A C.R.S. (1986). Underlying the General Assembly's demonstrated interest in uniform, statewide appeals in district courts for contested use or sales taxes is the Colorado constitutional requirement that all laws relating to state courts shall be uniform in their application. Colo. Const. art. VI, § 19.

We previously evaluated the magnitude of this state interest in *Gold Star Sausage Co. v. Kempf,* 653 P.2d 397 (Colo.1982). In *Gold Star,* we considered whether Denver could impose a limitations period for an appeal from a challenged use tax assessment.[12] *Id.* at 399. Denver contended that because its use taxes were a matter of local concern, it had authority to regulate the review procedures to which the revenue manager's decisions were subjected. We disagreed, based on the need for uniform, statewide access to state courts.

We reviewed the mandates of article VI, section 19, of the Colorado Constitution, which requires all laws relating to state courts to operate uniformly throughout the state, and section 21, which requires this court to make rules governing the administration of all state courts.[13] *Id.* at 400. In considering these constitutional mandates, we noted that this court had overturned local court procedural requirements in favor of uniform state rules. *Id.* (citing *Central v. Axton,* 159 Colo. 69, 410 P.2d 173 (1966), *Holland v. McAuliffe,* 132 Colo. 170, 286 P.2d 1107 (1955), and *City and County of Denver v. Bridwell,* 122 Colo. 520, 224 P.2d 217 (1950)). We concluded that Denver could not provide its own limitations period because it would thereby control access to state courts. We applied the state limitations period to the appeal in *Gold Star. Id.* at 401.

■ *Gold Star* is directly analogous to the present case.[14] Denver again attempts to control the laws relating to state courts by dictating which standard of review should attach to appeals taken from its locally imposed taxes. The legislature has already declared what the Colorado Constitution requires—that the dispute-resolution procedures for appeals taken from municipal-tax assessments operate uniformly in the state district courts.

The General Assembly has given authority to adopt either a municipal sales or use tax, or both, to any incorporated city or town in the state of Colorado. § 29–2–102. Were we to adopt Denver's argument, we would essentially invite each local statutory or home rule government to specify its own appeal procedures for locally imposed use

---

**12.** Denver contended that the twenty-day time limit provided in § 166A.9–8 of the DRMC controlled appeals, and not the thirty-day time limit provided in C.R.C.P. 106(a)(4).

**13.** Article VI, § 19, provides in part:

All laws relating to state courts shall be general and of uniform operation throughout the state, and except as hereafter in this section specified the organization, jurisdiction, powers, proceedings, and practice of all courts of the same class, and the force and effect of the proceedings, judgments and decrees of such courts severally shall be uniform.

Article VI, § 21, provides in part that "[t]he supreme court shall make and promulgate rules governing the administration of all courts."

**14.** Denver argues that Gold Star does not apply to this case because in *Gold Star* a municipal ordinance conflicted with a rule promulgated by this court, and not with a statute passed by the General Assembly. We disagree. Uniform access to the state court system can be threatened by a municipal ordinance regardless of whether it conflicts with a statute or a rule promulgated by this court.

or sales taxes. This would result in multiple appellate procedures from which district courts would be forced to choose when presiding over appeals taken from fundamentally similar tax assessments. This result directly contravenes the requirements of article VI, section 19, and is therefore impermissible.

### B. Extraterritorial Concerns and Other State Interests

We have defined extraterritorial concerns as those involving the expectations of state residents. *City and County of Denver*, 788 P.2d at 768 (citing *Bennion v. City and County of Denver*, 180 Colo. 213, 504 P.2d 350 (1972)).[15] The General Assembly has stated that sales and use taxes have an extraterritorial impact, as they affect the flow of commerce within the state. *See* § 29-2-101, 12A C.R.S. (1986). Appeals from locally imposed taxes can have no less effect on taxpayers across the state.

We have defined other state interests as encompassing historical considerations and constitutional provisions relating to matters of statewide and local concern. *City and County of Denver*, 788 P.2d at 768 (citing 1 C. Antieau, *Municipal Corporation Law* § 3.40, at 3–115 (1989), and *Local No. 127, Int'l Bhd. of Police Officers v. City and County of Denver*, 185 Colo. 50, 521 P.2d 916 (1974)). We have already discussed the constitutional mandates regarding uniform access to state courts, requiring uniform operation of laws therein. We have also noted that this court has favored state rules over local rules when access to state courts is at issue.

■ We are thus compelled to find that the appellate process governing locally imposed sales or use taxes is a matter of statewide concern and is thus subject to regulation by the General Assembly. Appeals taken from locally imposed use and sales taxes are therefore governed by the procedures found in section 29-2-106.1.

### V.

■ We now turn to Denver's contention that section 29-2-106.1 violates the separation of powers doctrine of the Colorado Constitution by assigning a nonjudicial function to the judiciary. We disagree.

Denver specifically argues that the revenue manager's hearing and determination of facts upon which tax law operates constitutes an administrative function. The *de novo* review provision of section 29-2-106.1, according to Denver, reassigns this function to a judicial body and demands that the judicial body do what has already been completed, thus violating the separation of powers provision.

While the revenue manager's hearing and determination are administrative, we find that they are quasi-judicial in nature and thus are susceptible to *de novo* review in the district court.

Article III of the Colorado Constitution provides:

> The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

Article VI of the Colorado Constitution provides that "[t]he district courts ... shall have such appellate jurisdiction as may be prescribed by law." Colo. Const. art. VI, § 9, cl. 1. Thus, the General Assembly has the power to establish rules governing access to reviewing courts. *See Warren Village v. Board of Assessment Appeals*, 619 P.2d 60, 63 (Colo.1980). The General Assembly has given the district courts the power to grant appropriate relief where any governmental body has exercised a judicial or quasi-judicial function. C.R.C.P.

---

**15.** Denver's proposed scheme could create confusion for taxpayers across the state. For example, the same taxpayer contesting a use tax assessed in one locality could also contest, before the same district court judge, a use tax assessed by an adjacent locality. Under Denver's scheme, both appeals before the same judge could be subject to two different standards of review.

106(a)(4); *see also City and County of Denver v. Eggert,* 647 P.2d 216, 220 (1982). Accordingly, the General Assembly gave taxpayers the right to appeal to district courts deficiency notices issued by one local government in section 29-2-106.1(8)(a). *See also* § 39-21-105(2)(b), 16B C.R.S. (1982).

■ The only issue we must consider therefore is whether the revenue manager engaged in a quasi-judicial function when assessing Walgreen's use tax liability. We have held that "[q]uasi-judicial action decides rights and liabilities based upon past or present facts." *Eggert,* 647 P.2d at 222 (citing *Talbot Farms v. Board of County Commissioners,* 43 Colo.App. 131, 602 P.2d 886 (1979)). We have distinguished quasi-judicial actions from quasi-legislative actions by noting that quasi-legislative action is not concerned with the parties at hand but rather has a general, prospective application. *Id.* (citing *Cottrell v. City and County of Denver,* 636 P.2d 703 (1981), and, 2 K. Davis, *Administrative Law Treatise* § 12:3, at 413 (2d ed. 1979)). The revenue manager's determination of deficient use taxes owed to the City and County of Denver does not affect any party other than Walgreen. The use tax assessment appealed from is concerned with Walgreen's past use of advertising supplements within the City and County of Denver from July 1, 1985, through June 30, 1988. The revenue manager clearly determined Denver's rights and Walgreen's liabilities when finding that Walgreen owed the City and County of Denver use taxes in the amount of $193,761.25. The determination had no prospective, general application whatsoever. We conclude that the revenue manager's deficient use tax assessment was quasi-judicial in nature. As such, the General Assembly did not violate the separation of powers doctrine when creating an appeal procedure for locally imposed use

and sales taxes in the district courts in section 29-2-106.1.

## VI.

■ Denver argues that Walgreen's appeal is jurisdictionally flawed because Walgreen failed to join an indispensable party, the Department of Revenue for the City and County of Denver, when perfecting an appeal pursuant to section 29-2-106.1, 12A C.R.S. (1986).[16] We disagree.

Denver relies on our decision in *Gold Star Sausage Co. v. Kempf,* 653 P.2d 397 (Colo.1982), as authority for its proposition that the department of revenue is an indispensable party. Denver's reliance is wholly misplaced. *Gold Star's* definition of indispensable parties does not control the issue presented by Denver because C.R.C.P. 106(a)(4), not section 29-2-106.1, governed the appeal in *Gold Star.*

In its appeal to the district court, Walgreen sought both *de novo* review of the revenue manager's determination and a declaration that section 29-2-106.1 controlled the appeal. The district court held that declaratory relief was available pursuant to C.R.C.P. 57.[17]

Section 29-2-106.1(8)(c), 12A C.R.S. (1986), provides that appeals to the district court shall be conducted consistently with section 39-21-105, 16B C.R.S. (1982). With respect to indispensable parties, section 39-21-105(5), 16B C.R.S. (1982), provides:

> Upon filing of the notice of appeal, the executive director of the department of revenue shall be deemed to be a party to such appeal; .... The appellant shall cause summons to be issued and cause the same to be served upon the executive director,.... Notice of the date of trial shall be mailed to the taxpayer and to the executive director....

Neither section 29-2-106.1 nor section 39-21-105(5) requires joinder of the depart-

---

16. Denver assumed that § 29-2-106.1 controls for purposes of this argument.

17. The district court held that Walgreen joined all the necessary parties to obtain a declaratory ruling pursuant to C.R.C.P. 57. Rule 57 requires joinder of persons "who have or claim any interest which would be affected by the

declaration." The DRMC vests the administration of the article in the manager of revenue. Denver, Colo., Revised Municipal Code § 53-94 (1985). Thus, by joining the revenue manager, Walgreen satisfied the joinder requirement under Rule 57.

ment of revenue for the purpose of appeal.[18] We conclude that Walgreen did not fail to join all the necessary parties by not joining the department of revenue.

## VII.

Lastly, Denver contends that the district court erred in concluding that article VI, section 9, authorizes the General Assembly to enact section 29–2–106.1, 12A C.R.S. (1986). Underlying Denver's contention is the premise that *de novo* review amounts to a grant of original jurisdiction that allows the district courts to determine local sales and use taxes. This contention is without merit.

By enacting section 29–2–106.1, the General Assembly did not give district courts the power to assess local taxes. The provision for *de novo* review exists only in the context of appellate review of local government use and sales tax assessments. This court has never excluded *de novo* review from the permissible scope of appellate jurisdiction. On the contrary, this court has condoned *de novo* review in appellate tribunals. *See People v. Williams*, 172 Colo. 434, 473 P.2d 982 (1970); *see also Russell v. McMillen*, 685 P.2d 255 (Colo.App.1984) (constitutional-defamation cases require de novo appellate review); *Western Wood Products v. Tittle*, 79 Colo. 473, 246 P. 791 (1926) (when a case is appealed to the district court from the county court, it stands for trial *de novo*).

## VIII.

We conclude that appeals taken from locally imposed use or sales taxes are a matter of statewide concern and that the General Assembly has defined appellate procedures necessary for uniform, statewide appeals in section 29–2–106.1, 12A C.R.S. (1986). The judgment of the district court that Walgreen shall have its use tax

assessments reviewed pursuant to section 29–2–106.1 is affirmed.[19]

---

18. When enacting §§ 29–2–106.1 and 39–21–105, the General Assembly clearly contemplated who should be a necessary party to appellate actions by specifying that the executive director is deemed a party when the notice of appeal is filed. Thus the General Assembly could have required departments of revenue to be necessary parties when enacting the statutes.

19. We do not conclude that §§ 53–56 and 53–124 are unconstitutional. They are inoperative to the extent that a taxpayer seeks relief pursuant to § 29–2–106.1. Taxpayers can pursue judicial review pursuant to local procedures under § 29–2–106.1(9). Subsection (9) is not at issue in this matter, however, since Walgreen sought relief pursuant to § 29–2–106.1.