FRATERNAL ORDER OF POLICE, COLORADO LODGE # 27, a Colorado non-profit corporation, Fraternal Order of Police, Colorado State Lodge, a Colorado non-profit corporation, and Larry Nead, Plaintiffs–Appellees,

v.

CITY AND COUNTY OF DENVER, a municipal corporation, and Elizabeth H. McCann, in her official capacity as Manager of Safety for the City and County of Denver, Defendants–Appellants.

No. 94CA0387.

Colorado Court of Appeals, Div. IV.

Aug. 31, 1995.

Rehearing Denied Oct. 12, 1995.

Certiorari Granted March 25, 1996.

Cross–Petition for Certiorari Denied March 25, 1996.

Wood, Ris & Hames, P.C., Donald B. Gentry; Hamilton & Faatz, P.C., Michael E. Gurley, Denver, for plaintiffs-appellees.

Daniel E. Muse, City Attorney, Geoffrey S. Wasson, Assistant City Attorney, Alice J. Fischer, Assistant City Attorney, Denver, for defendants-appellants.

Opinion by Judge MARQUEZ.

In this action for declaratory judgment, defendants, City and County of Denver and Elizabeth H. McCann, in her official capacity as Denver's Manager of Safety, appeal from a summary judgment entered in favor of plaintiffs, Fraternal Order of Police, Colorado Lodge # 27, Fraternal Order of Police, Colorado State Lodge, and Larry Nead, holding that the Peace Officers Standards and Training Act is applicable to peace officers employed by the City and County of Denver, including the Denver deputy sheriffs. We reverse.

A statutory scheme was established in 1965 creating the Colorado law enforcement training academy. Colorado Sess.Laws 1965, ch. 263, § 124–23–1, et seq., at 1031. The act was repealed and reenacted in 1973 and provided for certification of peace officers employed by public entities in Colorado. Colo. Sess.Laws 1973, ch. 384, § 124–23–1, et seq., at 1340. Under that act, a "peace officer" included:

> any ... deputy sheriff, other than one appointed with authority only to receive and serve summons and civil process ... who is engaged in full-time employment by the state, a city, city and county, town, judicial district, or county within this state.

Colo.Sess.Laws 1973, ch. 384, § 124–23–3(5) at 1341.

Although amended in subsequent years, *see* Colo.Sess.Laws 1983, ch. 273, § 24–33.5–301 at 928, the act's definition of peace offi-

cer, as pertinent here, remained essentially unchanged. Colo.Sess.Laws 1983, ch. 273, § 24–33.5–303(6) at 929. However, in 1984 the advisory board was renamed the Peace Officers Standards and Training Board. Colo.Sess.Laws 1984, ch. 182, § 24–33.5–304 at 679.

In 1992, the General Assembly enacted the Peace Officers Standards and Training Act (P.O.S.T. Act). Colo.Sess.Laws 1992, ch. 167, § 24–31–301, et seq., at 1091. This legislation created, as a division within the Department of Law, the Peace Officers Standards and Training Board (P.O.S.T. Board), Colo. Sess.Laws 1992, ch. 167, § 24–31–302 at 1093, the duties of which included certifying qualified peace officers. Colo.Sess.Laws 1992, ch. 167, § 24–31–303(1)(d) at 1094.

A peace officer was defined as including:

any sheriff certified pursuant to this Part 3, undersheriff, deputy sheriff other than one appointed with authority only to receive and serve summons and civil process ... which 'peace officer' is employed by the state or a city, city and county, town, judicial district, or county within this state....

Colo.Sess.Laws 1992, ch. 167, § 24–31–301(5) at 1092.

Under the Denver charter, the Manager of Safety is the ex-officio sheriff, and there is no authority granting Denver deputy sheriffs the same general police powers given sheriffs and their deputies in other counties. *See International Brotherhood of Police Officers v. City & County of Denver*, 185 Colo. 50, 521 P.2d 916 (1974).

The P.O.S.T. Board wrote a letter to Denver in June 1992 expressing concern that Denver deputy sheriffs were not being certified as peace officers. Denver, through the Director of Corrections and Undersheriff, replied that the issue had been previously litigated and that deputy sheriffs do not engage in routine law enforcement duties and are not required to be certified under P.O.S.T. standards.

As a result of this exchange, plaintiffs, on behalf of deputy sheriffs employed by the city and county, filed this action, seeking a declaration of rights under the 1992 version of the P.O.S.T. Act, and requesting a judgment declaring that Denver deputy sheriffs are entitled to state certification and must receive the minimum training prescribed by P.O.S.T. Board standards. On undisputed facts, the trial court thereafter granted plaintiffs' motion for summary judgment.

Subsequent to entry of the summary judgment, the entire P.O.S.T. Act was amended effective May 31, 1994. Section 24–31–301, et seq., C.R.S. (1994 Cum.Supp.). Under the 1994 Act, a peace officer is defined as "any person described in § 18–1–901(3)(*l*)(I), C.R.S." Section 18–1–901, C.R.S. (1994 Cum.Supp.), in turn, defines "peace officer" at various levels and, at level I, includes deputy sheriffs.

Section 18–1–901(3)(*l*)(I), C.R.S. (1994 Cum.Supp.) provides:

'Peace officer, level I,' means a police officer, undersheriff, deputy sheriff, Colorado state patrol officer pursuant to section 24–33.5–212, C.R.S., marshal, or security officer employed by any state institution of higher education pursuant to the limitations set forth in section 24–7–103, C.R.S., who is employed by the state or any city, city and county, town, or county within this state and who is certified pursuant to section 24–31–304, C.R.S. 'Peace officer, level I,' has the authority to enforce all the laws of the state of Colorado while acting within the scope of his authority and in the performance of his duties.

Section 18–1–901 defining peace officer in various ways was in effect prior to 1973. *See* Colo.Sess.Laws 1971, ch. 121, § 40–1–1001 at 413.

I.

Defendants assert that the 1994 Act excludes Denver's deputy sheriffs from its coverage and that, therefore, the issue is moot. We reject this assertion.

 A case is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy. *In re Marriage of Hartley*, 886 P.2d 665 (Colo.1994).

As discussed below, we conclude that Denver deputy sheriffs are peace officers within

the meaning of the 1994 Act. Accordingly, our decision will have a practical legal effect upon an existing controversy such that the issue is not moot.

## II.

Defendants assert that, because the supreme court stated in *International Brotherhood of Police Officers v. City & County of Denver, supra,* that Denver's deputy sheriffs do not possess the authority to enforce all the laws of the State of Colorado, such deputy sheriffs are not within the § 18–1–901 definition of peace officer. We disagree.

■ Interpretation of a statute is a question of law. *People v. Terry,* 791 P.2d 374 (Colo.1990).

■ A court's primary task in statutory construction is to ascertain and give effect to the legislative purpose underlying a statutory enactment. In ascertaining the legislative purpose, we look first to the statutory language employed by the General Assembly and give words their commonly accepted and understood meaning. If statutory language is uncertain as to its intended scope, with the result that the statutory text lends itself to alternative constructions, then a court may appropriately look to pertinent legislative history in determining which alternative construction is more in accordance with the legislative purpose. *Woodsmall v. Regional Transportation District,* 800 P.2d 63 (Colo. 1990).

## A.

The language of § 18–1–901(3)(*l*)(I) ostensibly includes Denver deputy sheriffs in the definition of peace officer, level I. Such is apparent from the language stating that a level I peace officer "means a ... deputy sheriff ... who is employed by ... any ... city and county ... within this state and who is certified pursuant to section 24–31–304, C.R.S."

■ As plaintiffs assert, when the P.O.S.T. Act was amended in 1994, the General Assembly contemplated adding language to the definition of peace officer, level I, which would have expressly excluded Denver deputy sheriffs, but ultimately eliminated all such language. Our review of the legislative history reveals that the language excluding Denver deputy sheriffs was dropped from the Act because Denver represented to the General Assembly that it would resolve the issue by reclassifying its deputy sheriffs. Senate debate on Second Reading of H.B. 94–1159, Fifty–Ninth General Assembly, Second Session (May 9, 1994). The remaining language of the P.O.S.T. Act, then, includes deputy sheriffs employed by any city and county within the state in the definition of peace officer, level I.

■ We also note that the § 18–1–901(3)(*l*)(I) definition of a level I peace officer includes a certification requirement. Arguably, such a requirement could be read to exclude Denver deputy sheriffs because they are not certified. A more reasonable reading is that such deputies may not be peace officers within the meaning of the P.O.S.T. Act until certified; thus evincing an intent to include all deputy sheriffs.

■ The underlying dispute in this case centers on whether Denver's deputy sheriffs must be certified by first undergoing P.O.S.T. training. Consequently, consideration of a certification requirement as part of the definition of peace officer would be a circular process. Thus, for purposes of the reference to § 18–1–901(3)(*l*)(I) made in the P.O.S.T. Act, we conclude that the certification requirement does not constitute a part of the referenced definition. *See Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985) (statutory construction that leads to an absurd result will not be followed).

Denver also asserts that its deputy sheriffs do not possess the authority to enforce all the laws of the state of Colorado as set forth in the second sentence of § 18–1–901(3)(*l*)(I). However, the legislative discussions concerning the addition of the phrase that a peace officer "has the authority to enforce all the laws of the state of Colorado while acting within the scope of his authority and in the performance of his duties" generally indicate that the legislative intent was to allow peace officers to act in their law enforcement capacity only when they were on duty. The

underlying concern was that allowing all peace officers to enforce state laws, wherever they were and even while they were not on duty, would lead to the undesirable result of a state-wide police force. House debate on Second Reading of H.B. 86–1153, Fifty–Fifth General Assembly, Second Session (February 28, 1986).

■ Thus, we conclude that, as this language was not intended to grant further authority, it also does not constitute a part of the definition of peace officer, level I. Therefore, we find no merit in defendants' assertion that, since Denver deputy sheriffs do not possess the authority to enforce all the laws of the state, they are not within the P.O.S.T. Act's coverage.

In light of our construction of the definition referenced by the P.O.S.T. Act, we conclude that the P.O.S.T. Act does purport to apply to Denver deputy sheriffs, requiring them to be certified by the P.O.S.T. Board.

## B.

■ This conclusion, however, results in a conflict between the P.O.S.T. Act and certain provisions in the state constitution pertaining to the City and County of Denver.

Denver is a constitutionally created home rule city. *City & County of Denver v. Colorado River Water Conservation District,* 696 P.2d 730 (Colo.1985).

Colo. Const. art. XX, § 2, provides in pertinent part:

The officers of the city and county of Denver shall be such as by appointment or election may be provided for by the charter; and the jurisdiction, term of office, duties and qualifications of all such officers shall be such as in the charter may be provided; but the charter shall designate the officers who shall, respectively, perform the acts and duties required of county officers to be done by the constitution or by the general law, as far as applicable.

Hence, because the constitution grants Denver the power to control the qualifications, as well as the powers, duties, and terms or tenure, of its deputy sheriffs, it necessarily follows that the P.O.S.T. Act is in conflict with the constitution to the extent that it purports to require Denver deputy sheriffs to be certified by the P.O.S.T. Board.

■ When a statute and the constitution are in conflict, the constitution is paramount law. *Passarelli v. Schoettler,* 742 P.2d 867 (Colo.1987). Therefore, as defendants assert, the General Assembly's attempt to determine the qualifications of Denver's deputy sheriffs is subordinate to the authority granted to Denver under the Colorado Constitution.

This position is supported by *City & County of Denver v. Rinker,* 148 Colo. 441, 447–48, 366 P.2d 548, 551 (1961), in which the supreme court held:

Article XX of the Colorado Constitution was adopted by a favorable vote of *all* of the people of the state of Colorado. By it, *all* of the people of the state of Colorado gave to the people of Denver the right to name their own officers and determine how they should be selected, their qualifications and tenure.

. . . .

Thus the method of selection and tenure of the officer[s] designated to carry out the duties of the position[s] became the concern of the people of Denver by authority expressly granted to them by all of the people of the state under Article XX and this is true even though those officers might be required to perform duties which were of statewide concern such as the duties imposed by constitution upon the County Clerk and Recorder, County Sheriff, Treasurer or Assessor. (emphasis in original)

And in *International Brotherhood of Police Officers v. City & County of Denver, supra,* 185 Colo. at 53, 521 P.2d at 917, in addressing Colo. Const. art. XX, the supreme court further stated:

This specific provision vests in Denver the exclusive control over public officers, their powers and duties.... Denver's power to determine the limits of their public officer's authority, *by charter or amendment to their charter* is all exclusive. (emphasis in original)

*See also City & County of Denver v. State,* 788 P.2d 764 (Colo.1990) (in determining whether state interest is sufficient to justify preemption of inconsistent home rule provisions, relevant is the fact that the Colorado Constitution specifically commits a particular matter to state or local jurisdiction).

Thus, Denver's authority under the Colorado Constitution to control the qualifications of its officers, including deputy sheriffs, cannot be infringed by statute.

Accordingly, the judgment of the district court is reversed.

DAVIDSON and KAPELKE, JJ., concur.