**WESTERN PAVING CONSTRUCTION CO., a Colorado corporation, Plaintiff–Appellee and Cross–Appellant,**

v.

**Patricia BEER, Manager of Revenue for the City and County of Denver; The Department of Revenue of the City and County of Denver, State of Colorado; and City and County of Denver, a municipal corporation, Defendants–Appellants and Cross–Appellees.**

**No. 94CA1510.**

Colorado Court of Appeals,
Div. IV.

April 4, 1996.

Caplan and Earnest LLC, Richard E. Bump, Susan Morley, Boulder, for Plaintiff–Appellee and Cross–Appellant.

Daniel E. Muse, City Attorney, Thomas Bigler, Assistant City Attorney, Denver, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge MARQUEZ.

In this C.R.C.P. 106(a)(4) action, defendants, Patricia Beer, Manager of Revenue for the City and County of Denver; the Department of Revenue of the City and County of Denver; and the City and County of Denver, (collectively Denver) appeal from a judgment reversing in part a ruling made by the Denver Manager of Revenue, imposing a use tax upon asphalt manufactured by plaintiff, Western Paving Construction Co. (Western Paving). Western Paving cross-appeals. We affirm in part and reverse in part.

Western Paving is a highway construction company based in unincorporated Adams County. Western Paving manufactures asphalt by combining asphaltic cement (a liquid petroleum derivative) with aggregates (a mixture of loose rocks and sand). The vast bulk of asphalt manufactured by Western Paving is installed onto roads and highways in the course of its construction activities. The remainder (approximately five percent) is sold to retail customers.

Western Paving purchases asphaltic cement from commercial oil refineries, but mines its own aggregates. At all times relevant to the present litigation, Western Paving paid sales or use taxes on the asphaltic cement utilized in the production of asphalt that was later used in the performance of its paving contracts in Denver. It did not, however, pay sales or use taxes on the aggregates included in the asphalt or the labor associated with its manufacture.

In 1989, Denver performed a tax compliance audit of Western Paving that covered November 1, 1986, through October 31, 1989. This audit resulted in the identification of deficiencies in use tax accrual on construction projects performed by Western Paving within Denver. Consequently, the city assessed use taxes and interest on the "manufactured cost" of the asphalt used by Western Paving on those jobs. This "manufactured cost" included the cost of the aggregates and labor used in production, but did not include the cost of asphaltic cement or the profit derived by the company.

Western Paving paid the assessed amounts under protest and timely sought a refund, which ultimately was denied. Western Paving then petitioned the Manager of Revenue for review. The hearing officer concluded that the asphalt assessment was proper. Western Paving then sought C.R.C.P. 106(a)(4) review.

The trial court concluded that the hearing officer had abused her discretion "to the extent the use tax assessment ... was for the aggregates" because they were not purchased at retail by Western Paving. Denver appeals that portion of the trial court's order.

Western Paving cross-appeals the portion of the trial court's order which it characterizes as implying "that the labor of its own employees in preparing asphalt constituted 'labor or services purchased' at retail that was includable in the 'manufactured cost' or otherwise subject to use tax assessment."

## I.

■ Denver contends that the trial court erred when it concluded that the general requirement of a purchase at retail contained in Denver Revised Municipal Code § 53–92 provided an exemption from the use tax otherwise imposed on manufacturers pursuant to Denver Revised Municipal Code § 53–106(a). We conclude that § 53–92 does not provide manufacturers an exemption from the use tax.

During the period relevant to this matter, § 53–92, designated "Legislative intent," provided in pertinent part:

(a) It is hereby declared to be the legislative intent of the city, acting through its duly elected representatives, that, for the purposes of this article, every person who stores, uses, distributes or consumes in the city any article of tangible personal property or any service subject to the provisions of this article, purchased at retail, is exercising a taxable privilege.

During the times pertinent here, Denver Revised Municipal Code § 53–106, designated "Application to manufacturers of tangible personal property," provided as follows:

(a) A manufacturer of tangible personal property is taxable under this article upon the use or consumption by the manufacturer of items of tangible personal property

manufactured by it that it also sells or installs for a price in the ordinary course of its business at retail, but the tax due hereunder in such case shall be levied only upon the gross value of all the materials, labor and services used and employed in the manufacture of said property, and not upon any profit that would have been derived from the ordinary retail sale thereof.

(b) The tax is levied upon the full purchase price of articles sold after the manufacture or after having been made to order and includes the full purchase price of materials used and service performed in connection therewith, excluding however, such articles as are otherwise exempted in this article. The purchase price is the gross value of all the materials, labor, service, and the profit thereon, included in the price charged to the user or consumer.

The hearing officer determined that Western Paving was a "manufacturer" within the meaning of § 53–106 and that it manufactures asphalt which it then, in the ordinary course of its business at retail, sells or installs onto roads and highways for a price. Accordingly, the hearing officer further concluded that the asphalt assessment was properly computed on the gross value of all the materials, labor, and services used and employed in its production.

The trial court concluded, however, that § 53–106 was not a "suitable basis upon which to assess the *entire* ... tax assessment." (emphasis added)

In reaching this conclusion, the court stated:

> Section 53–106 could be read to require the assessment of a use tax on the gross value of all materials used in manufacturing regardless of whether such materials were purchased by the manufacturer or acquired by the manufacturer's own mining operations. Such a definition would assess a tax not only upon the labor and services used by Western in creating asphalt, but also upon the aggregates. However, § 53–106 also contains a subpart (b). This subpart specifically excludes from taxation articles that are otherwise exempted in the use tax ordinance.

The court then found that "§ 53–92 specifically calls for the assessment of a use tax only upon materials that were purchased," and determined "that materials not purchased at retail are excluded from being taxed pursuant to § 53–106(a), according to § 53–106(b)." Thus, the court concluded that "the hearing officer erred in upholding the use tax assessment upon the aggregates Western mines itself," and that "[o]nly the portion of the tax assessed upon the materials, labor and services purchased by Western in manufacturing asphalt is appropriate pursuant to § 53–106."

 The scope of review on appeal from a judgment entered in a C.R.C.P. 106(a)(4) proceeding is limited to ascertaining whether the tribunal, here the hearing officer, exceeded its jurisdiction or abused its discretion. *Coates v. Cripple Creek,* 865 P.2d 924 (Colo. App.1993). In determining whether a hearing officer abused his or her discretion, a reviewing court may consider whether the hearing officer misconstrued or misapplied applicable law, and whether, in light of the whole record, the findings of fact are supported by competent evidence. *Stamm v. City and County of Denver,* 856 P.2d 54 (Colo.App.1993).

 As applied to this case, § 53–106(a) was implemented to assess a tax upon Western Paving's use or consumption of asphalt it manufactured, not upon the materials and labor expended in its production. These costs were merely being used to establish a taxable basis for the end product. The relevant question then is whether the value of the aggregates included in the asphalt is exempt from the use tax otherwise imposed on the value of the asphalt because the aggregates were not purchased "at retail" within the purview of § 53–92.

 When construing a statute or ordinance, we must, wherever possible, ascertain and give effect to the intent of the enacting legislative body. Statutes or ordinances cannot be construed in such a way as to defeat obvious legislative intent, and the best guide to intent is the declaration of policy which forms the initial part of an enactment. *Walgreen Co. v. Charnes,* 819 P.2d 1039 (Colo.

1991). Statutes and ordinances, however, must be construed to further the intent of the enacting body as evidenced by the entire legislative scheme. *Bynum v. Kautzky,* 784 P.2d 735 (Colo.1989).

Denver Revised Municipal Code § 53–97 is the only section in the use tax article specifically dedicated to "exemptions." Section 53–92, setting forth legislative intent, simply does not address the issue. Thus, even if we assume, as the trial court ruled, that the reference to "exemptions" contained in Denver Revised Municipal Code § 53–106(b) also applies to § 53–106(a), we conclude that the "articles as are otherwise exempted in this article" are limited to those found in § 53–97. Section 53–97 does not exempt non-retail transactions involving personalty from the reach of the use tax.

■ Any separate requirement for a purchase at retail within § 53–92 is satisfied here. When a manufacturer of tangible personal property uses or consumes items of tangible personal property manufactured by it that it also sells or installs for a price in the ordinary course of its business at retail, a taxable event has occurred within the ambit of § 53–106(a). In effect, Western's use of the asphalt it has manufactured is treated as the equivalent of a purchase at retail. The resulting basis for imposition of the resulting tax liability is the gross value of all the materials, labor, and services employed in the production of the manufactured property, including the value of the aggregate.

Accordingly, we hold that § 53–92 does not constitute an exemption as referenced in § 53–106(b).

## II.

■ Western Paving contends that the use tax assessment must at least exclude the value of labor associated with the manufacture of asphalt because such labor cannot be construed as tangible personal property purchased at retail. We find nothing improper with including the value of labor in the assessment.

Western Paving cites *International Business Machines Corp. v. Charnes,* 198 Colo. 374, 601 P.2d 622 (1979), as support for the

notion that a use tax cannot be imposed upon the value of labor. There, the Colorado Department of Revenue sought to impose a use tax upon items IBM withdrew from its work in process and sales inventories and diverted to its own intracompany use within Colorado. The taxable basis of such items was established by the Department as "the full finished goods cost of all materials, labor and other charges usually included in a work-in-process inventory." *International Business Machines Corp. v. Charnes, supra* (fn.1).

In *Charnes,* the supreme court held that the assertion of a use tax against the enhanced value of IBM's inventory withdrawals, rather than against the initial cost of materials and components, extended the use tax beyond its intended function. It reasoned that a levy upon the full finished goods cost or capitalized cost would amount to a value added tax.

That case, however, arose under the state use tax regime which does not have a provision analogous to § 53–106(a). Rather, the reach of the state scheme is limited to imposing a use tax upon the storage, use, or consumption of "tangible personal property purchased at retail." *See* § 39–26–202(1), C.R.S. (1994 Repl.Vol. 16B).

The paramount importance of this distinction to the outcome of that case is illustrated by the supreme court's holding that, absent circumstances clearly demonstrating a contrary legislative intent, the term "retail purchase" meant an actual retail purchase because dispensing with an actual retail purchase as a necessary antecedent for the use tax, and allowing an inventory withdrawal to trigger use tax liability would extend statutory language that the General Assembly has left unattenuated.

By its express terms, § 53–106(a) levies a tax upon "the gross value of all the materials, *labor* and services used and employed in the manufacture of said property." (emphasis added).

Accordingly, as a tax imposed upon the value of labor employed in the production process is clearly within the mandate of the ordinance, it was proper for a use tax to be levied upon the value of the labor at issue in this case.

### III.

▇ Western Paving also contends that § 53–106 may not properly be employed to tax the asphalt it uses for highway paving projects in Denver because such asphalt is not "sold" or "installed" within Denver in the ordinary course of its business at retail. We disagree.

As relevant here, § 53–106(a) provides:

A manufacturer ... is taxable under this article upon the use or consumption by the manufacturer of items of *tangible personal property manufactured by it that it also sells or installs for a price in the ordinary course of its business at retail* .... (emphasis added)

Section 53–106 was substantially modified in 1981 in response to *Rocky Mountain Prestress, Inc. v. Johnson,* 194 Colo. 560, 574 P.2d 88 (1978). There, the supreme court held that a construction company's importation of concrete forms manufactured by it outside Denver for use within the city did not constitute a retail purchase for purposes of use tax assessment.

Similar to the instant case, Denver had advised Prestress that it would impose a use tax upon the gross value (exclusive of profit) of all materials, labor, and engineering services used in the design and fabrication of the forms employed by it in construction projects in Denver.

At that time, however, the use tax article did not contain a specific manufacturer's use tax, and accordingly, manufacturers were only subject to use taxes under the general provisions of the Code requiring the "use" or "consumption" in Denver of an "article of tangible personal property purchased at retail."

The trial court ruled that the forms were properly subject to the use tax, stating in pertinent part:

(The fact that [Prestress] does not purchase from itself in the ordinary sense is not determinative. When [Prestress] created or fabricated the members, it acted as a manufacturer, and when it used them to build a building, as a contractor/consumer. The purchase is implied by law in such a situation. Clearly, if another contractor purchased such prestressed units from plaintiff outside of Denver and incorporated them into a Denver building, said use would be subject to the use tax.)

*Rocky Mountain Prestress, Inc. v. Johnson, supra,* 194 Colo. at 562–3, 574 P.2d at 90.

The supreme court rejected this analysis and ultimately held that the use tax ordinance did not cover the transaction in that case. First, the court stated that the trial court had presumed, contrary to the undisputed evidence at trial, that there existed "a market for prestressed concrete forms which is separate from the market for construction of buildings using such forms." And, it further stated that the trial court erroneously implied a "purchase at retail" within the meaning of the ordinance. *Rocky Mountain Prestress, Inc. v. Johnson, supra,* 194 Colo. at 563, 574 P.2d at 90.

The court then offered a detailed explanation of the "fictional sale" concept relied upon by the trial court. The concept of a "fictional sale," enunciated in *Republic Steel Corp. v. McCastlain,* 240 Ark. 979, 403 S.W.2d 90 (1966), is based upon two key considerations: the purpose of the use tax and the dual roles of the taxpayer. *Rocky Mountain Prestress v. Johnson, supra.*

With respect to the latter consideration, the court stated that:

[T]he structure of the Prestress organization ... does not fit within the policy behind the fiction. Because no retail market for prestressed structural forms exists, there is no possibility of a competitive advantage for Prestress as the result of the taxation of retail sales in prestressed forms.

*Rocky Mountain Prestress, Inc. v. Johnson, supra,* 194 Colo. at 564, 574 P.2d at 91.

Based on the foregoing, we conclude that the requirement of § 53–106(a) that a manufacturer use or consume items of tangible personal property manufactured by it that it also sells or installs for a price in the ordinary course of its business at retail was intended merely to insure that a separate retail market existed for the item used or consumed by the manufacturer. In other

words, such requirement was intended to insure that, unlike the forms manufactured in the *Prestress* case, the item used or consumed was not manufactured purely for the manufacturer's own internal use.

This interpretation is buttressed by the fact that the "Rules Regarding the Assessment and Collection of Sales and Use Taxes on Sales and Use of Tangible Personal Property Manufactured by Construction Companies," promulgated by the Denver Treasury Division, Taxpayer Service Section, are "inapplicable to a manufacturer that has not *within the year prior to the use of the item in question sold a similar manufactured item at retail, as, for example, sold it to a contractor."* (emphasis in original)

Our construction is also supported by the fact that, in 1991, § 53–106(a) was amended such that it imposed a tax upon:

(a) The use or consumption of tangible personal property, including the installation into or the affixing to real property of another of the tangible personal property, by a manufacturer of the tangible personal property *for which there exists also a retail market and of a type that the manufacturer sells or could sell to others* shall be taxable under this article .... (emphasis added)

It is undisputed that Western Paving is a "manufacturer" of asphalt within the meaning of § 53–106; that it "uses" or "consumes" asphalt manufactured by it to fulfill its contractual obligations within the city; and that it sells asphalt for a price in the ordinary course of its business at retail, albeit outside Denver. Accordingly, we hold that the Denver Manager of Revenue's assessment of a use tax against Western Paving pursuant to § 53–106(a) was proper here.

To the extent the trial court concluded that Denver could not levy a use tax upon the value of the aggregates utilized in the manufacture of asphalt ultimately used or consumed in the city, the judgment is reversed. To the extent the trial court ruled that Denver could levy a use tax upon the value of labor employed in the manufacture of asphalt ultimately used or consumed in the city, the judgment is affirmed.

BRIGGS and KAPELKE, JJ., concur.